Dan WILLOCKS, et al.

v.

Henry J. DODENHOFF, et al.

Civ. No. H–85–684(MJB).

United States District Court,
D. Connecticut.

June 24, 1986.

M. Donald Cardwell, James C. Wing, Jr., Kenneth J. McDonnell, Cardwell, Cardwell & Smoragiewicz, Hartford, Conn., for plaintiffs.

Richard C. Robinson, Sorokin & Sorokin, Hartford, Conn., Michael H. Heneghan, He-

neghan, Pikor, Kennedy & Allen, Rocky Hill, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BLUMENFELD, Senior District Judge.

The plaintiffs, five members of the Willocks family, have brought this civil action for damages under 42 U.S.C. § 1983 in which they allege that defendants Henry Dodenhoff and John Mazzamurro caused the unconstitutional search of the plaintiffs at Bradley International Airport on August 8, 1983. Dodenhoff and Mazzamurro are detectives employed by the Town of Rocky Hill, a municipality incorporated under the laws of Connecticut.[1] Presently before this court is the defendants' motion for summary judgment,[2] in which they claim immunity from the constitutional violations they are alleged to have caused. For the reasons set forth below the court finds that the defendants cannot be held liable under section 1983 for the violations alleged herein, and that they are entitled to summary judgment as a matter of law.

### I. *The Facts*

The facts of this case are not seriously in dispute. On August 6, 1983, detectives Henry Dodenhoff and John Mazzamurro ("the detectives") submitted to a Connecticut Superior Court judge an application for a warrant to search the persons and accompanying possessions of the five plaintiffs in this case on their expected arrival at Bradley International Airport on August 8, 1983 from a vacation in Jamaica. The detectives signed and appended a sworn affidavit to the warrant application.

### A. *The Affidavit*

The affidavit recites that in October 1982 detective Mazzamurro received a tip from a "reliable and confidential informant" that the Willocks family was dealing in illegal narcotics imported from Jamaica. According to the affidavit the informant also told Mazzamurro that in the year and one-half prior to October 1982, the family had spent a total of "approximately $60,000.00 in cash" on the purchases of an addition to their home located on Farmstead Road in Rocky Hill, on an "in-ground swimming pool" in their backyard, and on two automobiles. The affidavit states that the informant identified that the Willockses had two children, that the father was an insurance agent, and that the mother worked for the United Parcel Service.

The affidavit next states that the detectives conducted surveillance on Farmstead Road in Rocky Hill and observed that an addition to the Willocks home had in fact been constructed, and that a swimming pool was located in the backyard. The affidavit further states that the detectives "conducted an investigation concerning the informant's ... other information which was revealed," and that their investigation "included a basic financial investigation." According to the detectives, "[t]hat investigation coorabated [*sic*] the informant's information exactly and indicated that Dan and Yvonne Willocks ... are receiving substantial income in addition to their employment, and their life-style resembles the pro-

---

1. The plaintiffs have appended a state claim against the Town of Rocky Hill in which they argue that the town must assume any liability for the acts or omissions of its police officers pursuant to Connecticut General Statutes Section 7–465. As the liability of the town under section 7–465 is entirely dependent upon a finding of liability on the part of its officers, this ruling serves to dispose of the claim against the town as well.

2. On May 20, 1986, the court heard arguments on the defendants' motion for summary judgment and announced in open court that the motion would be granted with an opinion to follow at a later date. Prior to the court's issu-

ing an opinion, the plaintiffs, on May 23, 1986, moved the court to reconsider the grant of defendants' motion. In the motion for reconsideration the plaintiffs further delineated the contentions they offered in their brief in opposition to the defendants' motion and at the hearing. The court having now considered the plaintiffs' written and oral arguments in opposition to the motion for summary judgment, and their arguments in support of their motion for reconsideration, this opinion serves to dispose of the motion for reconsideration as well as to provide a record of the court's ruling in open court on the motion for summary judgment.

file of persons who engage in the trafficking of narcotics." No details of the financial investigation were provided.

The affidavit next states that approximately ten months later, on August 4, 1983, a Lieutenant Dunn of the Rocky Hill Police Department "received an anonymous telephone complaint from a concerned citizen" who, like the confidential informant, stated that the Willocks family was in the business of importing illegal narcotics from Jamaica. The caller identified the Willockses' home address, and, according to Lieutenant Dunn, commented that the Willocks family was "living well above their monetary means," and that "they put an in-ground swimming pool into their Rocky Hill property, they recently took delivery of a 1983 Mercedez Benz, that Dan Willocks is a self-employed insurance agent, that the insurance business is a 'cover' for his true source of income being narcotics, and that his wife is employed by the United Parcel Service." The caller allegedly "further states that Dan Willocks, his wife Yvonne, and children are present in Jamaica conducting a narcotic tansaction [sic] and are due to arrive at Bradley International Airport on August 5 or 6, 1983."

According to the affidavit, on August 5 the detectives contacted Rick Shapiro, an agent for the Drug Enforcement Agency (DEA) in Pennsylvania, who told them that a DEA investigation of a suspect named Michale Mintz had revealed that the Willockses' home phone number had been called on a prior occasion by Mintz. Shapiro also informed the affiants that Mintz had been arrested three times for drug offenses and that he was then serving a ten-year sentence for federal narcotics violations.

The affidavit then states that on August 5 the detectives "obtained from Trooper

[Dave] Hutchinson [of the Connecticut State Police] the flight itinerary of the Willocks family," which identified the travel agent used by the Willockses, the names on the ticket reservations, the flight numbers, and the dates of the flights. According to the detectives, the information revealed that on their outbound trip leaving Connecticut on July 21, 1983, the Willockses reserved four seats on various connecting flights to Montego Bay, Jamaica. The detectives then state: "Their return flight was originally scheduled to ... [leave] Montego Bay on August 7, 1983 and arrive at ... Bradley [that same day] .... Within the past week while the Willocks were in Jamicia [sic] the flight plans were changed." The detectives go on to state that the new itinerary called for the Willockses to return a day later, on August 8, with five persons in their party rather than four. Later on in the affidavit the detectives assert that "[i]t is extremely common according to the profiles of persons who engage in the smuggling of narcotics to change their flight plans abruptly ...."

## B. The Search

On the basis of the information in the affidavit, the judge signed and issued the warrant to search the Willockses for illegal narcotics upon their arrival at Bradley International Airport.

The Willocks party of five arrived at Bradley as anticipated on August 8, and was met by Dodenhoff, Mazzamurro, and other law enforcement personnel. Each member of the family was searched along with accompanying baggage.[3] No narcotics were found.[4] Shortly thereafter the Willockses were permitted to leave the airport and go home. No criminal charges were filed against them.

---

**3.** The Willockses allege that each family member, including their two young children, was made to strip down to his/her underwear during the search.

**4.** The detectives did find that Dan Willocks had in his possession approximately $27,000 in American currency. The cash was seized assert-

edly because the amount was in excess of the $25,000 maximum an individual may bring into the country absent a declaration to customs officials. The detectives aver that the money was eventually turned over to federal authorities pursuant to a subpoena. Affidavit of Henry J. Dodenhoff at 2.

## II. *Analysis*

### A. *The Adequacy of the Warrant Application on its Face*

■ The analysis of this case is simplified by beginning with a discussion of what the plaintiffs do not contend.

In their brief and at the hearing on this motion in open court the plaintiffs conceded that the state judge did not err in finding that the allegations contained in the affidavit accompanying the warrant application were sufficient to establish probable cause. Plaintiffs' Brief at 10. In other words, they admitted that the warrant application was valid *on its face*.[5] Thus, the instant case involves an entirely separate type of attack on the validity of a warrant application than was made in *Malley v. Briggs*, —— U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), a recent Supreme Court decision that received considerable attention by the parties on this motion. In *Malley* the plaintiff claimed that a judge had erred in finding that an arrest warrant contained information adequate to support probable cause, and sought to hold a police officer liable under section 1983 for his incompetence in applying for the facially-deficient warrant. The police officer claimed that, whether or not the warrant application did show probable cause, he was absolutely immune under section 1983 in the action against him for filing the application because the judge approved it. The Supreme Court rejected the absolute immunity defense and instead held that the officer had a "qualified immunity" in a suit against him for filing a facially-deficient warrant. *Id.* at ——, 106 S.Ct. at 1097. The Court ruled that the officer's "shield of immunity [will] be lost" "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Id.* at 1098.

Accordingly, as the plaintiffs in this case have conceded that the search warrant shows probable cause on its face, there is no question here that the defendants retain their "shield of immunity" against any section 1983 claims based upon the adequacy of the information contained on the face of the warrant application. *Id.*

### B. *The Veracity of the Warrant Application*

The remainder of the plaintiffs' claims are attacks upon the *veracity* of the allegations contained in the affidavit accompanying the warrant. The plaintiffs first claim that the defendants violated their fourth amendment rights as incorporated by the fourteenth amendment by deliberately, or recklessly, including material false statements in the affidavit. They further claim that even if they cannot prove that the defendants deliberately or recklessly misrepresented information on the warrant application, the defendants violated the plaintiffs' constitutional rights because they *negligently* included material false statements in the affidavit.

### 1. *The Franks Standard*

Before proceeding to analyze these claims it will be helpful to briefly review the case law pertinent to a police officer's constitutional duty to exclude false statements from affidavits accompanying warrant applications.

The landmark case in this area is *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), in which the Supreme Court held that under the fourth amendment a criminal defendant could successfully challenge a search warrant, and have the fruits of the search suppressed, if the accused could prove by a preponderance of the evidence that a material false statement was included by the affiant in the warrant application either knowingly and intentionally, or with reckless disregard for the truth. 438 U.S. at 155–56, 98 S.Ct. at 2676.

---

**5.** *Cf. Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1981) (probable cause to issue warrant supported by affidavit (1) stating that police received anonymous letter detailing information concerning an impending narcotics purchase, and (2) showing that police substantially corroborated that information).

In *Franks* the defendant claimed as false the affiants' statement that they "contacted" certain named individuals and that they had "personal conversations with oth these people" who had "revealed" certain information to the affiants that was included in the affidavit to establish probable cause. *Id.* at 157, 98 S.Ct. at 2677. At the suppression hearing the defense counsel asserted that the named individuals would testify that they never had the conversations that the affiants alleged had taken place. The lower court rejected the defendant's offer of proof and held "that a defendant under *no* circumstances may so challenge the veracity of a sworn statement used by police to procure a search warrant." *Id.* at 155, 98 S.Ct. at 2676.

The Supreme Court reversed, holding that an accused's fourth amendment rights are violated when a police officer deliberately or recklessly includes a material false statement in a warrant application. *Id.* at 155–56, 98 S.Ct. at 2676. Significantly, in reaching its conclusion the Court emphasized that the announced rule was one of "limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." *Id.* at 167, 98 S.Ct. at 2682. The Court carefully excluded from the embrace of the rule statements in the warrant affidavit that were the result of police negligence in checking or recording facts relevant to a probable cause determination. *United States v. Levasseur*, 619 F.Supp. 775, 778 (E.D.N.Y. 1985). The Court explained the new rule and delineated its scope as follows:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false;

and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. *Allegations of negligence or innocent mistake are insufficient.* The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks v. Delaware*, 438 U.S. at 171–72, 98 S.Ct. at 2684–85 (emphasis added).

■ Thus, it is clear that in the context of a criminal case, a fourth amendment challenge to the veracity of the affidavit will not be entertained on a motion to suppress if the accused merely alleges that the affiant's false statements were the product of the affiant's "negligence or innocent mistake." *Id.*

2. *The Section 1983 Negligence Claim*

■ In this case, the plaintiffs have in effect asked the court to read the fourth amendment protections more broadly for section 1983 civil plaintiffs than for criminal defendants. Relevant case law indicates, however, that constitutional rights should be applied congruently in criminal suppression hearings and section 1983 damage actions. *Malley v. Briggs*, 106 S.Ct. at 1098; *Baker v. McCollan*, 443 U.S. 137, 143–47, 99 S.Ct. 2689, 2694–96, 61 L.Ed.2d 433 (1979); *Monroe v. Pape*, 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961); *Krohn v. United States*, 742 F.2d 24, 26 (1st Cir.1984) (applying *Franks* standard to section 1983 action). Moreover, the language of section 1983 provides no more protections than what the Constitution itself provides. That section extends a remedy to plaintiffs for "deprivation[s] of any rights, privileges, or immunities *secured by*

*the Constitution and laws....*" 42 U.S.C. § 1983 (emphasis added). Accordingly, section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979).

Thus, to dispose of the plaintiffs' claim of negligence in this case it is sufficient to state that, in line with *Franks v. Delaware*, no violation is implicated under the fourth amendment when a police officer is alleged to have negligently included material false statements in an affidavit accompanying a warrant application. *Cf. Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (Due Process Clause not implicated by negligent act of official causing unintended loss of life, liberty or property), 106 S.Ct. at 677–80 (Stevens, J., concurring in judgment). "Having been deprived of no rights secured under the United States Constitution," the plaintiffs have no claim of negligence cognizable under section 1983.[6] *Baker v. McCollan*, 443 U.S. at 146–47, 99 S.Ct. at 2695–96.

### 3. *The Claim of Deliberate or Reckless Misconduct*

Left to be addressed are the plaintiffs' claims that the defendants deliberately or recklessly included material false statements in the Willocks search warrant.

■ When inquiring into the veracity of a warrant, one begins with "a presumption of validity with respect to the affidavit

supporting the search warrant." *Franks v. Delaware*, 438 U.S. at 171, 98 S.Ct. at 2684. It follows that in a section 1983 suit attacking the veracity of the warrant, the defendants have met their Rule 56 burden on a motion for summary judgment by submitting, as they have here, evidence of the warrant signed and issued by a judicial officer. Fed.R.Civ.P. 56(e). The burden then shifts to the plaintiff to "set forth specific facts showing that there is a genuine issue for trial." *Id.*

■ Under *Franks* the party challenging the warrant has the burden of making a substantial showing of proof on each of the following: (1) that the affiants knowingly and intentionally, or with reckless disregard for the truth, included false statements in the affidavit; (2) that the false statements were necessary to the finding of probable cause. *Id.* at 155–56, 98 S.Ct. at 2676.

■ In their briefs and at the hearing on this motion the plaintiffs identified two statements in the warrant application that they contended were false. These will be examined in turn.

The first challenged statement concerns the affiants' "financial investigation" of the information provided to them by the confidential informant in October 1982. In the affidavit the affiants state that "[t]hat investigation coorabated [*sic*] the informant's information exactly and indicated that Dan and Yvonne Willocks ... are receiving substantial income in addition to their employment ...." According to the plaintiffs, the "informant's information" to

---

**6.** The plaintiffs cite *Malley v. Briggs*, —— U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), to support their claim that under section 1983 the plaintiffs may be permitted to allege and prove that the defendants violated their constitutional duties by negligently including material false statements in the affidavit. *Malley* does nothing of the sort. As described in the text, *Malley* involved a challenge to the warrant application *on its face,* and an allegation that the police officer should have known that the application failed to show probable cause. The case turned not on a holding that the plaintiffs failed to

raise a constitutional claim, but on an application of the proper standard for testing the defendant's *defense of immunity* to that claim. *Id.* at ——, 106 S.Ct. at 1095; *see Mitchell v. Forsyth*, —— U.S. ——, ——, 105 S.Ct. 2806, 2814, 86 L.Ed. 2d 411 (1985). It is not necessary to reach the immunity question with respect to the claim of negligent conduct in this case because under the *Franks* standard the plaintiffs simply have not "been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. at 140, 99 S.Ct. at 2692.

which this statement refers [7] was the following statement found earlier in the affidavit: "The C.I. [confidential informant] further stated that ... within the last year and one half the residents [at the Farmstead Road address] have expended approximately $60,000.00 in cash through purchases of two automobiles, the installation of an in-ground swimming pool, and an addition to their residence."

The plaintiffs contend that both of these statements are false and submit their own affidavits in which they aver that they "financed the home and the swimming pool ... through second mortgages," and that "the automobiles ... were not purchased for 'cash' but were financed through our bank."

These alleged misrepresentations are not the sort of "false statements" that *Franks* prohibits. To the extent that the plaintiffs have directly contradicted the informant's information that the purchases were made "in cash," [8] they have not alleged a *Franks* violation, for "[t]he deliberate falsity or reckless disregard whose impeachment is permitted [under *Franks*] is only that of the affiant, *not of any nongovernmental informant.*" 438 U.S. at 171, 98 S.Ct. at 2684 (emphasis added); *Rugendorf v. United States,* 376 U.S. 528, 531–32, 84 S.Ct. 825, 827–28, 11 L.Ed.2d 887 (1964).

The plaintiffs are therefore left with the burden of showing the falsity of the affiants' *own* statement that they "corroborated the informant's information exactly." They attempt to do so by arguing that the affiants could not possibly have "corroborated ... exactly" the informant's information that the purchases were made "in cash," when they were not in fact made "in cash."

If the words "corroborate" and "exactly" were subjected to the precise analysis of a logician the plaintiffs could perhaps question whether the affiants' statement was

technically true. However, the fourth amendment has not required so exacting a standard of truthfulness from police officers who apply for a warrant:

> "[W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing" .... This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.

*Franks v. Delaware,* 438 U.S. at 164–65, 98 S.Ct. at 2680–81 (quoting *United States v. Halsey,* 257 F.Supp. 1002, 1005 (S.D.N.Y. 1966)).

Moreover, the Supreme Court has made it clear that "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical rather than a commonsense, manner." *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)).

> [T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative

---

**7.** It is not at all clear to what portion of the "informant's information" the statement actually refers.

**8.** In fact, reading their affidavits closely, the plaintiffs do not state that the purchases of the addition to the house and of the swimming pool were *not* made "in cash," but only that they were financed "through second mortgages." There still may have been a cash transaction between the Willockses and the builders.

attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*United States v. Ventresca,* 380 U.S. at 108, 85 S.Ct. at 745.

Any commonsense view of the informant's information contained in the warrant affidavit involved here would recognize that that information raised a question of the plaintiffs' ability to pay for the purchases they made, regardless of whether the purchases were actually made "in cash" or on credit.[9] Briefly stated, the informant's information indicated that the Willockses were incurring financial obligations beyond their apparent ability to pay, raising an inference that they had sources of income other than what their jobs provided. The detectives' "basic" financial investigation apparently confirmed the same information. In this context the affiants' assertion that they corroborated "the informant's information exactly" simply was not "false" within the meaning of *Franks.*[10]

The second statement that the plaintiffs have challenged as deliberately or recklessly false is the affiants' assertion in the warrant that while on vacation the Willockses changed their flight plans for their return trip from Jamaica. The plaintiffs aver that they made no such change in their flight plans.

Even if the affiants' statement is false, this contention fails under the second prong of the *Franks* test. The claimed misstatement was at most " 'of only peripheral relevancy to the showing of probable cause ....' " *Franks v. Delaware,* 438 U.S. at 163, 98 S.Ct. at 2680 (quoting *Rugendorf v. United States,* 376 U.S. at 532, 84 S.Ct. at 828), and unnecessary to that finding. *See United States v. Mankani,* 738 F.2d 538, 545 (2d Cir.1984).

### III. *Conclusion*

The plaintiffs in this section 1983 action have sought to hold the defendants liable for an allegedly unconstitutional search by challenging the validity of a warrant secured by the defendants to permit that search. As the plaintiffs admit that the allegations in the warrant application were adequate to support a finding of probable cause, the court finds that the defendants are immune from any claims based upon a challenge to the warrant on its face.

As to the challenge to the veracity of the warrant application, the plaintiffs have not carried their burdens under *Franks* and Fed.R.Civ.P. 56(e) of "set[ting] forth specific facts" of the defendants' deliberate or reckless inclusion of material false statements in the warrant application:

Rule 56(e) provides that when a motion for summary judgment is supported [as required by Rule 56(c) ] an adverse party may not rest upon mere conclusory allegations or denials. The party opposing the motion must set forth "concrete particulars," *Dressler v. The MV Sandpiper,* 331 F.2d 130, 133 (2d Cir.1964), and cannot make a secret of his evidence, holding it close to his chest until the trial. *See Donnelly v. Guion,* 467 F.2d 290, 291 (2d Cir.1972). It is not sufficient merely to assert a conclusion without

---

**9.** The purchase of goods creates an obligation to pay for them. Credit is one component of the overall price paid for a product. The cost to a retailer of purchasing goods consists of (1) the amount he has to pay to obtain the goods, and (2) the date on which he has to make that payment. If there is a differential between a purchase for cash and one on time, that difference is not interest but part of the price.

*Catalano, Inc. v. Target Sales, Inc.,* 605 F.2d 1097, 1103 (9th Cir.1979) (dissenting opinion), *rev'd and remanded,* 446 U.S. 643, 100 S.Ct. 1925, 64 L.Ed.2d 580 (1980).

**10.** The second part of the challenged statement, that the affiants' "investigation ... indicated that Dan and Yvonne Willocks ... are receiving substantial income in addition to their employment," has not been contradicted by the plaintiffs in any of their affidavits. Thus, they have offered nothing to rebut the presumption that this statement is true, and so have not made out a constitutional violation on the basis of this statement. Moreover, the statement is an expression of opinion, not of fact.

supplying supporting arguments or facts in opposition to the motion. *Id.* at 293. *S.E.C. v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978). Beyond the claims of intentional or reckless misconduct "[a]ny further claims of impropriety do not state constitutional violations," *Krohn v. United States,* 742 F.2d at 26, so fail under section 1983 for that reason.

On May 20, 1986, following a hearing on this motion, the court ruled in open court that this motion for summary judgment was granted in favor of all defendants in this case. This opinion serves as a written record of that ruling. The plaintiffs' motion for reconsideration of that ruling, filed after the hearing, is hereby denied.

SO ORDERED.

