Sam H. JONES, Jr., Plaintiff,

v.

The TOWN OF SEAFORD, DELAWARE, Charles W. Pugh and Robert Lee, Defendants.

Civ. A. No. 86–103–JJF.

United States District Court, D. Delaware.

April 15, 1987.

Edward C. Gill, of Robert C. Wolhar & Associates, Georgetown, Del., for plaintiff.

Stephen P. Casarino, of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendants.

## OPINION

FARNAN, District Judge.

Plaintiff Sam H. Jones, Jr., brought this civil rights damages action against Sergeant Charles W. Pugh and Officer Robert Lee, two members of the Seaford Police Department, alleging various violations of his constitutional rights.[1] The alleged violations flow from the defendants' application for a search warrant, the search of Jones' business pursuant to the warrant, and Jones' ensuing arrest. These alleged deprivations of plaintiff's Fourth and Fourteenth Amendment rights under the United States Constitution form the predicate for this § 1983 action which was filed against Sergeant Pugh and Officer Lee, individually and in their official capacities.[2] Plaintiff has also included in his Complaint pendent state law claims for false imprisonment, illegal arrest, and trespass.

Presently before the Court is Defendants' Motion for Summary Judgment. In support of this Motion, Sergeant Pugh and Officer Lee contend that no constitutional violation occurred since probable cause existed to support the issuance of the search warrant. In the alternative, the officers assert the defense of qualified immunity.

## I. FACTS AND CONTENTIONS.

The following facts are not in dispute. In late January and early February of 1984, members of the Seaford Police Department investigated two burglaries that occurred at Abraxas Records & Tapes ("Abraxas"). The first burglary, which occurred on January 24, 1984, was investigated by Sergeant Roger A. Griffith. According to Sergeant Pugh, Sergeant Griffith related to him that, during the course of Griffith's burglary investigation, he had observed items of drug paraphernalia displayed for sale in Abraxas. Sergeant Pugh's first eyewitness view of these items occurred approximately one month later, in February, 1984, when he investigated a second burglary at Abraxas. Sergeant Pugh states that during his investigation of the second burglary he personally observed what he characterized as "numerous bongs, hash pipes, rolling papers and screens." Docket Entry ("D.E.") # 19.

After the second burglary investigation, Sergeant Pugh and Officer Lee discussed the observations of Sergeants Griffith and Pugh in light of Delaware's recently enacted Drug Paraphernalia Law, 16 Del.Code Ann. § 4771–4775 (Supp.1982), and the possibility of obtaining a search warrant for the Abraxas premises. D.E. # 23—Affidavit of Charles W. Pugh, at 12; D.E. # 24—Affidavit of Robert Lee, at 13. However, before applying for a search warrant, the officers discussed the Drug Paraphernalia Law with a Delaware Deputy Attorney

---

1. In his Complaint, plaintiff also named the Town of Seaford as a defendant. During the course of briefing this Motion, plaintiff withdrew his claim against the Town of Seaford and moved that it be dismissed as a defendant. As a result, I shall consider only those allegations of liability that pertain to the conduct of Officers Pugh and Lee.

2. Plaintiff originally claimed that the actions of the defendants resulted in a violation of his first amendment rights. This claim was abandoned on the record at oral argument. Accordingly, the Court shall consider it withdrawn.

General, and the issue of whether the items viewed during the two burglary investigations fell within the terms of that statute, and the sufficiency of the application for the warrant as it related to the question of probable cause. D.E. # 23—Affidavit of Charles W. Pugh, at 12–15; D.E. # 24—Affidavit of Robert Lee, at 13–16.

## A. *The Search Warrant Application and Affidavit.*

After their discussion with the Deputy Attorney General, the two officers drafted an affidavit for a search warrant. The affidavit set forth information derived from the personal observations of Sergeant Pugh and Officer Lee. Sergeant Pugh and Officer Lee then submitted the search warrant application and affidavit to a state magistrate, Aubrey Hudson. The affidavit in support of the search warrant stated the following:

### PROBABLE CAUSE SHEET

1. Your affiant # 1 is Detective Sergeant Charles W. Pugh of the Seaford Police Department. Sergeant Pugh has been a member of the Seaford Police Department for approximately eleven years and has been assigned to the Criminal Investigation Section for approximately six years. During this time, Sergeant Pugh has participated in numerous drug investigations, many of which he has headed the investigation (sic). Sergeant Pugh has attended and successfully completed several courses of drug identification and investigations conducted by both Federal and State Agencies.

2. Your affiant # 2 is Detective Robert Lee of the Seaford Police Department. Detective Lee has been a member of the Seaford Police Department for approximately six years and has been assigned to Criminal Investigation Section for approximately four years. During this time, Detective Lee has participated in numerous drug investigations and has also attended and successfully completed numerous schools on drug identification conducted at both Federal and State levels.

3. Your affiants can state that Samuel H. Jones, Jr. B/M, D.O.B. 4–12–53 is the owner and manager of Abraxas Records & Tapes, 330 High Street, Seaford, DE.

4. Your affiants can state that a check of the City of Seaford electric company records shows Samuel H. Jones, Jr. as having the electric service in his name at 330 High Street, Seaford, DE.

5. Your affiants can state that police records reveal that Samuel H. Jones, Jr. is the owner of Abraxas Records & Tapes.

6. Your affiants can state that on October 31, 1980, they participated in the arrest of Samuel H. Jones, Jr. During this arrest the premises of Abraxas Records & Tapes, 330 High Street, Seaford, DE, was searched of which your affiants participated (sic). During this search it was found that there was numerous items of drug paraphernalia in the business for sale (sic). These items included bongs, hash pipes, test kits and roach clips.

7. Your affiants can state that Sunday, January 29, 1984, Sergeant Roger A. Griffith of the Seaford Police Department investigated a burglary at Abraxas Records & Tapes. During the course of his investigation, Sergeant Griffith observed in display cases for sale, items of drug paraphernalia including bongs, hash pipes, and screens.

8. On Friday, February 28, 1984, affiant # 1 investigated another burglary at Abraxas Records & Tapes. During the course of this investigation, numerous bongs, hash pipes, rolling papers and screens were observed.

9. Your affiants can state that to their knowledge Samuel H. Jones, Jr. or Abraxas Records & Tapes is not a licensed distributor or dealer of tobacco products.

10. Your affiants can state that through their experience in investigating drug cases and their knowledge of all aspects relating to that environment, the articles that have been described previously in paragraphs 6, 7 & 8 are displayed for sale at Abraxas Records &

Tapes, are intended to be used with controlled substances as identified in Title 16 of the Delaware Code.

11. Your affiants pray for the issuance of the search warrant to search the premises of Abraxas Records & Tapes to remove the drug paraphernalia mentioned previously.

D.E. #19—Probable Cause Sheet and Additional Probable Cause Sheet, at A–3, A–4.

On March 16, 1984, Magistrate Hudson signed and issued a warrant to search the premises of Abraxas Records and Tapes, located at 330 High Street, Seaford, Delaware.

### B. *The Search.*

The warrant authorized law enforcement officers to search for any and all drug paraphernalia as enumerated in 16 Del. Code Ann. § 4701(13)(a)–(*l*) (1974 and Supp.1986). The warrant also authorized the search and seizure of business records pertaining to the sale and procurement of drug paraphernalia, and cartons and containers used for the storage, display, or sale of drug paraphernalia.

Sergeant Pugh and Officer Lee executed the search warrant on March 16, 1984. Numerous items were seized from the store. Among the items seized were assorted packs of rolling papers, glass tubes, wooden pipes, wood and brass pipes, and stone pipes. In addition, Sergeant Pugh and Officer Lee seized numerous water pipes in sizes ranging from six and one-half to seventeen and one-half inches in height, some of which contained double or triple chambers. Also listed on the search warrant return are items that the officers characterized as bongs. The officers also seized one alligator-shaped water pipe/bong and one water pipe/bong in the shape of a man. A black rubber stopper connected to a red hose, an apparatus which plaintiff described as an integral part of a Syrian-type water pipe, was also seized. The defendants also seized business records listing the names of persons who had purchased items in the store. Miscellaneous items such as metal pipe

bowls, screws and pipe screens comprised the remainder of the seized objects.

### C. *The Arrest.*

Jones was not arrested at the time of the search. Instead, the police officers instructed him to report to the police station the following Monday morning, at which time he was arrested and charged with possession of drug paraphernalia with intent to deliver, a violation of 16 Del.Code Ann. § 4772. These charges against Jones were ultimately nolle prosequied. D.I. #1—Complaint, ¶ 11. The record in this case does not provide a reason for the decision by the Delaware Attorney General to terminate the prosecution against Jones.

### II. ANALYSIS.

### A. *Standard for Summary Judgment.*

The Court may properly enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of identifying those portions of the relevant documents which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, — U.S. —, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). But when a motion for summary judgment is made and adequately supported, the nonmoving party must go forward with specific facts establishing the existence of a triable issue of fact. *Jersey Central Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109 (3rd Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986). Controverted facts that are not "material to the resolution of the dispute" will not preclude the entry of summary judgment. *EEOC v. Westinghouse Electric Corp.*, 725 F.2d 211, 218 (3rd Cir.1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the govern-

ing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* — U.S. —, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

In considering this motion, the Court has disregarded disputed facts that are not material to the issues presented on summary judgment. *Metcalf v. Long,* 615 F.Supp. 1108, 1113 (D.Del.1985).

### B. *Elements of a Section 1983 Action.*

To maintain a cause of action under § 1983, plaintiff must establish two essential elements: first, that the conduct at issue was committed by persons acting under color of state law; and second, that the conduct complained of deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See, e.g., Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *rev'd in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Sergeant Pugh and Officer Lee admit that the "color of law" requirement is satisfied in this case. Instead, the officers claim that Jones suffered no constitutional deprivations because the search, seizure and arrest were conducted pursuant to a validly executed search warrant supported by probable cause.

### C. *The Adequacy of the Warrant Application on its Face.*

Jones contends that the defendants violated his Fourth and Fourteenth Amendment rights because they either knew or should have known that the affidavit submitted to the Magistrate was insufficient to support a finding of probable cause to search.

In support of this contention, Jones cites the case of *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). In that case, the *Malley* Court, in phrasing the issue to be decided, questioned "whether reasonably well-trained officer[s] in [defendants'] position[s] would have known that their affidavit failed to establish probable cause and that [they] should not have applied for the warrant." 106 S.Ct. at 1098.

It is important to note that in *Malley* the plaintiffs were arrested on the authority of an arrest warrant which was plainly devoid of probable cause. *Briggs v. Malley,* 748 F.2d 715, 716 (1st Cir.1984), *aff'd,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). In other words, the inquiry with regard to the officers' knowledge was made in the context of an established constitutional violation which was predicated upon a plain reading of the arrest warrant. The purpose of the question was to determine the degree of immunity the defendant police officers should be extended and not to determine whether probable cause existed to support the issuance of the warrant.

This case, on the other hand, presents the more fundamental question concerning whether a constitutional violation has occurred. Thus, this Court must first address the threshold question of whether the application and issuance of the subject search warrant were based on probable cause as established by the undisputed facts. It would be premature to proceed to the analysis applied in *Malley,* as urged by plaintiff, without first determining whether Jones' constitutional rights were violated.

■ In reviewing a Magistrate's finding of probable cause, the Court is guided by the premise that in a marginal case a search conducted pursuant to a warrant "may be sustainable where without one it would fall." *United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed.2d 684 (1965) (citing *Jones v. United States,* 362 U.S. 257, 270, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960) *rev'd in part on other grounds, United States v. Salvucci,* 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980)). A reviewing court's function is "simply to insure that the Magistrate had a 'substantial basis for ... concluding' that probable cause existed." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (citing *Jones, supra,* 362 U.S. at 271, 80 S.Ct. at 736). The court should resist the impulse to engage in a *de novo* determination of probable cause. Rather, the task of a district court is merely to determine whether, in light of the totality of the circumstances

known to the Magistrate, the record contains substantial evidence to support the issuance of the warrant. *Massachusetts v. Upton*, 466 U.S. 727, 728, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984) (per curiam).

▮ In this case, it is clear that the Magistrate had a substantial basis for his finding of probable cause. As evidenced by the facts stated in the affidavit, Sergeant Pugh and Officer Lee have significant training and experience in drug-related enforcement and investigation. Both officers were involved in a 1980 drug investigation that resulted in the arrest of the plaintiff. In the course of the 1980 investigation and arrest, a search of Abraxas Records & Tapes revealed that numerous items such as bongs and hash pipes were then for sale in the store. Under *United States v. Harris*, 403 U.S. 573, 582–83, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971), the fact of a prior arrest may properly be considered by a Magistrate in making a probable cause determination.

▮ Standing alone, this information would not support a finding of probable cause. However, when combined with and amplified by other facts recited in the affidavit, the similarity of the items seized in the 1980 search to the items sought in the warrant presently at issue gave rise to "reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 566, 98 S.Ct. 1970, 1982, 56 L.Ed.2d 525 (1978) (quoting *Carroll v. United States*, 267 U.S. 132, 158–59, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925)). More importantly, the officer involved in the second burglary investigation at Abraxas Records & Tapes had, only a few days before seeking the warrant, personally viewed items which appeared to him to be drug paraphernalia as defined in 16 Del. Code Ann. § 4701 on display for sale in the store. The fact that Jones was not a distributor or dealer of tobacco products was probative of the officers' contention that the items for sale in the store were in fact drug paraphernalia. Taken as a whole, these facts provide substantial evidence for the Magistrate's determination of probable cause.

▮ The major thrust of Jones' argument is that the affidavit was fatally deficient because it failed to set forth sufficient indicia of his criminal intent in the display and sale of the items. *See* 16 Del. Code Ann. §§ 4701(13), 4771–75; *Delaware Accessories Trade Ass'n v. Gebelein*, 497 F.Supp. 289, 294 (D.Del.1980). This line of reasoning fails because it confuses the standard of probable cause required to justify the issuance of a search warrant with the elevated standard required to justify conviction. *See Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) (allegations of an affidavit must exceed mere suspicion but need not establish clear evidence that would justify conviction); *United States v. West*, 508 F.Supp. 1028, 1031 (D.Del.1981), *aff'd*, 688 F.2d 827 (3rd Cir.1982) (citing *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969) (only the probability and not a prima facie showing of criminal conduct is necessary to support issuance of search warrant)). In applying for a search warrant, the Affiants need not try the case in front of the magistrate, nor prove the suspect guilty beyond a reasonable doubt of every element of the crime at issue. *See United States v. Ventresca*, 380 U.S. 102, 107, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965) (citing *Locke v. United States*, 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364 (1813)). Probability, rather than the prima facie showing of criminal activity, is the standard of probable cause. *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964). The Supreme Court's remarks in *Dumbra v. United States*, 268 U.S. 435, 441, 45 S.Ct. 546, 549, 69 L.Ed. 1032 (1925), clearly enunciate the standard:

> In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with whether the affiant had reasonable grounds at the time of the affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched, and if the ap-

parent facts set out in the affidavit be such that a reasonably discreet and prudent man be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of the warrant.

*Dumbra v. United States,* 268 U.S. at 441, 45 S.Ct. at 549. The statements of fact contained in the affidavit at issue are sufficient to meet this standard and amply support the issuance of the warrant.

### D. *The Veracity of the Warrant Application.*

Jones also attacks the veracity of the allegations contained in the affidavit underlying the search warrant. Specifically, Jones alleges that the two officers made false and misleading statements in the search warrant application. D.E. #1—Complaint, ¶ 13(a); D.E. #29, at 9–11.

■ Challenges to the validity of a search warrant based upon allegations that the accompanying affidavit contains material false statements are governed by *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *Franks* established the proposition that the Fourth Amendment requires police officer affiants to exclude knowing and intentional or reckless falsehoods from affidavits. In *Franks,* the Supreme Court held that a criminal defendant may, upon a substantial preliminary showing, challenge the validity of a search warrant on the ground that the affiant included in the underlying affidavit deliberate or recklessly made falsehoods concerning material facts necessary to the determination of probable cause. *Id.* at 155–56, 98 S.Ct. at 2676. Under *Franks,* if the defendant establishes falsity by a preponderance of the evidence, the false statements will be stricken from the affidavit. *Id.* The court must then determine whether the information remaining in the affidavit is sufficient to support a finding of probable cause. If not, the fruits of the search must be suppressed. *Id.* at 156, 98 S.Ct. at 2676.

■ The *Franks* rule arose in the context of a criminal case on a motion to suppress the fruits of an allegedly unconstitutional search. A question therefore emerges in the instant case as to whether and how this rule is to be applied in a § 1983 action for damages. It appears that our Court of Appeals has not directly spoken to the issue whether a *Franks* inquiry is appropriate in the context of a § 1983 suit. However, I believe that when material false statements are alleged to have been included in a probable cause affidavit, a court's refusal to examine the alleged falsehoods for at least minimal compliance with the standards propounded in *Franks* may preclude the entry of summary judgment in even the most frivolous of cases. *Franks* challenges will generally involve disputed issues of fact concerning whether or not certain statements contained in an affidavit are false. While I recognize that a court may not resolve genuine issues of material fact on a motion for summary judgment, Rule 56 does require a court to decide, based on the governing law, what facts are material. *See EEOC v. Westinghouse Electric Corp., supra,* 725 F.2d at 218. Therefore, to the extent *Franks* challenges can be disposed of on the basis of materiality, they would appear to be·consistent with a court's function on a Rule 56 motion. Fed.R.Civ.P. 56. Challenges which involve disputed issues of material fact must, of course, remain within the province of a jury. In addition, recent case law suggests that the requirements of the Constitution should be as stringently adhered to in § 1983 damages actions as in motions to suppress arising in the criminal context. *Malley v. Briggs, supra,* 106 S.Ct. at 1098; *Baker v. McCollan,* 443 U.S. 137, 143–47, 99 S.Ct. 2689, 2694–96, 61 L.Ed.2d 433 (1979); *Garris v. Rowland,* 678 F.2d 1264, 1273 (5th Cir. 1982) (*Franks* challenge considered in civil context); *Krohn v. United States,* 742 F.2d 24, 26 (1st Cir.1984) (*Franks* standard applied to § 1983 action); *Willocks v. Dudenhoff,* 110 F.R.D. 652, 657 (D.Conn.1986) (*Franks* standard applied to § 1983 action on motion for summary judgment). Thus, if the plaintiff meets the *Franks* burden and can substantially show that Sergeant Pugh and Officer Lee knowingly and intentionally, or with reckless disregard for the

truth, submitted an affidavit containing false statements, and that the false statements were necessary to the Magistrate's finding of probable cause, he will have established that his fourth amendment rights were violated by the issuance of a warrant lacking in probable cause. *Krohn v. United States*, 742 F.2d 24, 26 (1st Cir. 1984); *Willocks v. Dudenhoff*, 110 F.R.D. 652, 657 (D.Conn.1986).

■ The starting point in the analysis of a *Franks* challenge is the "presumption of validity" that attaches to an affidavit in support of a search warrant. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. By submitting the search warrant in question, which was signed and issued by a Magistrate, defendants have satisfied their burden under Federal Rule of Civil Procedure 56(e). *Willocks v. Dudenhoff, supra*, 110 F.R.D. at 657. In an effort to satisfy his burden under *Franks*, Jones contends that five statements in the affidavit were false.

Jones argues that paragraphs 6, 7, 9 and 10 of the probable cause sheet contain material falsehoods. D.E. # 19—Plaintiff's Answers to Interrogatories, Interrogatory No. 5. Paragraph 6 concerns the statement that:

> [O]n October 31, 1980, [Officers Pugh and Lee] participated in the arrest of Samuel H. Jones, Jr. During this arrest the premises of Abraxas Records & Tapes ... were searched of which your affiants participated (sic). During this search it was found that there was numerous items of drug paraphernalia in the business for sale (sic). These items included bongs, hash pipes, test kits and roach clips.

D.E. # 19—Probable Cause Sheet, ¶ 6. In objecting to these statements, Jones states in his Brief that "as to Mr. Jones' 1980 charge it should be pointed out ... that while drugs were allegedly found in his house, those drugs were his housemate's, a man named William Christopher Davis. Mr. Davis ended up pleading guilty to some of the charges ... while [Jone's] charges were dismissed." D.E. # 29—Plaintiff's Answering Brief, 10.

■ Weighing plaintiff's challenge against the *Franks* standard, his objections to the statements in this paragraph fall short. The challenged paragraph does not state or imply that Jones was convicted of a drug possession offense. With regard to the arrest, the officers simply stated that Jones was arrested in 1980, which has not been contradicted or proven false.

■ Jones also challenges the statement in paragraph 6 that, during the 1980 search of his business, the police found test kits and roach clips. *Id.* at 11. Jones avers that these items were never sold in his store. The only evidence Jones offers to support this allegation of falsity is his own word. He has failed to offer any evidence that the statement, if untrue, was knowingly and intentionally false or made with reckless disregard for the truth. However, assuming that the statement is false, it fails to pass muster under the second element of the *Franks* test. The alleged falsehood, if stricken from the affidavit, would diminish only slightly the force of the statements supporting the Magistrate's finding of probable cause. The fruits of the first search are admittedly relevant to the probable cause determination; however, the inclusion of these two items is not crucial to that determination. *Franks*, 438 U.S. at 163, 98 S.Ct. at 2680. Therefore, with respect to Jones' challenges to the statements comprising paragraph 6 of the affidavit, the *Franks* test has not been satisfied.

■ The third statement that Jones challenges as false is the affiants' assertion that on January 29, 1984, Sergeant Roger A. Griffith of the Seaford Police Department investigated a burglary at Abraxas Records & Tapes. The affidavit states that in the course of his investigation, Sergeant Griffith "observed in display cases for sale, items of drug paraphernalia including bongs, hash pipes and screens. D.E. # 19 —Probable Cause Sheet, ¶ 7. Jones does not dispute the statement that Griffith in fact investigated a burglary at Jones' store on January 29, 1984. He does, however, dispute the statement that while there, Griffith observed items of drug parapher-

nalia, including bongs, hash pipes, and screens. D.E. #22—Deposition of Sam H. Jones, at 30. The dispute over the items observed in the store seems, in essence, to be one of characterization. First, there is no dispute that Jones sold pipe screens and that those items were openly displayed within plain view of anyone who happened to be walking through the store. *Id.* at 30, 31. Jones disputes the statement that he had bongs in the store. He states that the word bong is a slang term for waterpipe, which he admits having sold. *Id.* at 27, 32, 44, 51. Jones admits to having stocked and sold many types of pipes; however, he denies having sold what the officers characterized as "hash pipes". The essence of Jones' argument appears to be that because "any pipe can be used for [inhaling] anything that is combustible," the police should not have characterized the pipes sold in his store as "hash pipes." *Id.* at 28, 52. Jones' challenge to the officers' use of the terms "bong" and "hash pipe" amounts at best to a charge of mischaracterization, which does not rise to the level of the knowing, intentional or reckless falsehood contemplated by *Franks.* Accordingly, the Court finds plaintiff's *Franks* challenge with respect to the statements contained in paragraph 7 to be without merit.

The next disputed statement is contained in paragraph 9 of the affidavit, which states: "Your Affiants can state that to their knowledge, Samuel H. Jones, Jr. or Abraxas Records & Tapes is not a licensed distributor or dealer of tobacco products." D.E. #19—Probable Cause Sheet, ¶ 9. Jones admits that in order to sell cigarettes in Delaware, one must first obtain a license. D.E. #22—Deposition of Sam H. Jones, Jr., at 33. He further admits that he was not a licensed seller of cigarettes or tobacco. *Id.* at 34. He nonetheless avers that since he did not sell cigarettes, he did not need a license to do so. And, insofar as a license is required to sell tobacco products, Jones asserts that he could do so under the general retailers license. *Id.*

Under Delaware law, "tobacco products" are defined as "all products, including but not limited to, cigarettes, cigars and pipe tobacco, made primarily from tobacco for individual consumption." 30 Del.C.Ann. § 5301(16). Plaintiff admits he did not possess a license to sell "tobacco products" as the term is defined under Delaware law. On the basis of this admission, it is therefore clear that the officers' statement in paragraph 9 of the affidavit is not false. Since Jones has failed to make even a primitive showing of falsity with respect to this statement, further analysis under *Franks* is not required.

The statements contained in paragraph 10 of the probable cause sheet constitute Jones' final challenge on *Franks* grounds. Paragraph 10 states that:

> Your Affiants can state that through their experience in investigating drug cases and their knowledge of all aspects relating to that environment, the articles that have been described previously in paragraphs 6, 7 and 8 are displayed for sale at Abraxas Records & Tapes are intended to be used with controlled substances as identified in Title 16 of the Delaware Code (sic).

D.E. #19—Probable Cause Sheet, ¶ 10. Jones represents that the affiants' statement as to his intent is "absolutely untrue." D.E. #22—Deposition of Sam H. Jones, p. 35.

The Court is mindful that in order to present a real and substantial issue under *Franks*, the challenger's attack must present something more than mere conclusory allegations. *Franks* requires an allegation of deliberate falsehood or of reckless disregard for the truth. Further, the allegation must be accompanied by an offer of proof. This, at a minimum, must be shown before a Court is compelled to conduct a hearing on the veracity of the challenged statement. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. The Court has searched in vain throughout the plaintiff's Brief, deposition testimony and answers to interrogatories for facts capable of supporting or substantiating this bald allegation of falsehood. Jones' unsubstantiated allegation of falsehood with respect to paragraph 10 falls far short of the standard established in *Franks*. However, even if Jones were able to muster suffi-

cient evidence to invite further inquiry into the veracity of this statement, his attempted attack would not withstand scrutiny. The statements contained in paragraph 10 represent the officers' opinions and beliefs, based upon their expertise in drug interdiction, of the purpose for which the items sold in Jones' store were intended to be used. In order to challenge the officers' opinion, Jones would have to make a proper preliminary showing that the officers did not actually believe that the items sold in Jones' store were intended to be used with controlled substances. Jones, however, has chosen to attack the statements in paragraph 10 from another standpoint. He contends that the statements in paragraph 10 cannot withstand scrutiny under *Franks* because he did not in fact intend the items sold in his store to be used for illegal purposes. D.E. # 22—Deposition of Sam H. Jones, Jr., at 35. For the purposes of the statement at issue, Jones' actual intent is simply not relevant. Relevant evidence would consist of evidence pertinent to the officers' opinions and beliefs, and capable of showing, at least preliminarily, that the opinion stated in paragraph 10 was not the opinion actually held by the officers or that items displayed were not of a type generally known to be involved in drug usage.

### E. *The Execution of the Warrant.*

Jones' next contention is that the manner in which the search was executed caused a violation of his constitutional rights. Specifically, Jones relates that during the search, he told Officers Pugh and Lee that he was not doing anything wrong and that the seized items were not illegal. D.E. # 29—Plaintiff's Answering Brief, at 10. According to Jones, Sergeant Pugh replied, "Well, maybe not, but by the time you're able to prove that you'll be out of business." D.E. # 22—Deposition of Sam H. Jones, Jr., p. 56. Jones contends that this statement, which Sergeant Pugh denies having made, shows malice on the part of the officer. Jones also avers that during the execution of the search he directed the officers' attention to public notices that were placed throughout the store. These notices stated that:

All merchandise sold in this store is intended for LEGAL use by the customer. Any person attempting to buy merchandise for illegal purposes, or implying illegal use, will be denied service, and asked to immediately leave the premises. You must be 18 years or older to purchase tobacco and snuff products and accessories. We require a valid photo I.D. drivers license for proof of age, upon request.

D.E. # 30—Appendix to Plaintiff's Answering Brief, A–1, A–2.

For the purposes of a motion for summary judgment, the Court accepts as true Jones' assertion that during the execution of the search he directed the officers' attention to signs and notices he had placed throughout the store. Ostensibly, these signs served to alert the public that the items sold in the store were intended solely for legal use and would be sold only to persons over 18 years of age. The issues arising from the execution of the search warrant were not thoroughly briefed, and the significance of these particular events is not immediately clear. Upon distillation, the argument, at least in part, appears to be that once the police officers either discovered or were made aware of the safeguards that Jones had taken to insure the legality of his operation, the search should have stopped. Where, as here, probable cause exists to support the issuance of a warrant, the probable cause upon which the warrant is based does not dissipate in the face of denials of wrongdoing made at the time of warrant execution. Nor does it dissipate because the suspected wrongdoer has taken the trouble to erect notices that purport to insulate him from wrongdoing.

Further, Jones' reliance upon allegations of malice is misplaced for two reasons. First, Jones apparently assumes that a constitutional violation occurred based upon his conclusion that the warrant was not supported by probable cause. However, the Court has found that at the time the statement was allegedly made, Sergeant Pugh was acting pursuant to a validly executed search warrant supported by probable cause. No additional facts have

been brought to the Court's attention which would indicate that the manner in which the search was conducted exceeded the boundaries of a properly executed search. On this record, I therefore cannot hold that Jones has alleged facts indicating that Sergeant Pugh's conduct caused a violation of Jones' fourth or fourteenth amendment rights. Absent an underlying constitutional violation, Jones' contention of malice on the part of Sergeant Pugh is without constitutional significance.

### F. *The Constitutionality of the Arrest.*

Finally, Sergeant Pugh and Officer Lee have moved for summary judgment on Jones' claim that he was illegally and unconstitutionally arrested. D.E. # 1—Complaint, ¶ 13(d). Both officers assert that there are no material factual disputes with respect to the arrest and that they are entitled to judgment as a matter of law. Plaintiff has failed to articulate his theory with respect to the illegality of the arrest. The Court can reasonably infer that plaintiff's argument with respect to the arrest is premised, at least in part, on his view that the search warrant was invalid. Also, plaintiff briefly represented at oral argument his position that the arrest was invalid in light of the officers' knowledge of the safeguards that plaintiff had taken to secure the legality of his business. Since the Court was not persuaded by either of these arguments with respect to the issues of probable cause and the execution of the warrant, they cannot serve as the foundation for a charge of illegal arrest. Accordingly, the Court finds that neither of these arguments support plaintiff's claim that he was illegally and unconstitutionally arrested.

The Court is cognizant of Third Circuit authority indicating that, at least insofar as warrantless arrests are concerned, the reasonableness of a police officer's probable cause determination is generally an issue for the jury. *Losch v. Borough of Parkesburgh,* 736 F.2d 903, 909 (3rd Cir.1984); *Patzig v. O'Neil,* 577 F.2d 841, 848 (3rd Cir.1978). However, in *Deary v. Three Un-Named Police Officers,* 746 F.2d 185, 192 (3rd Cir.1984), the Third Circuit acknowledged that summary judgment would be appropriate under certain circumstances, and that not every civil case involving issues of probable cause need be tried to a jury. The issue of probable cause may properly be resolved on a motion for summary judgment when there are no genuine issues of material fact and no material credibility conflicts. *Deary, supra,* 746 F.2d at 192. Taking all of Jones' material factual allegations as true, the Court believes that a reasonable jury could not find that the officers lacked probable cause to seek the warrant, execute it, or arrest the plaintiff. The Court shall grant defendant's motion for summary judgment on Count I of the Complaint. Given the Court's conclusion that Jones suffered no deprivation of his constitutional rights, it is unnecessary to reach the issue of qualified immunity.

### G. *State Claims.*

Count II of Jones' Complaint charges Sergeant Pugh and Officer Lee with false imprisonment, illegal arrest and trespass. These claims are predicated on alleged violations of the laws of the State of Delaware. The Court's power to hear these claims derives from the doctrine of pendent jurisdiction. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Two prerequisites must be met before the Court may exercise pendent jurisdiction. First, the federal and state claims must derive from "a common nucleus of operative fact." Second, the federal and state claims must be such that a "plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138. The exercise of pendent jurisdiction rests within the sound discretion of the trial judge. However, *Gibbs* counsels dismissal of the state claims if the federal claims are dismissed before trial. *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. The Court shall therefore dismiss without prejudice the state law

claims found in Count II. *See Metcalf v. Long, supra,* 615 F.Supp. at 1122.

### III. CONCLUSION.

For the foregoing reasons, Count I of the Complaint shall be dismissed with prejudice and summary judgment shall be entered in favor of Officers Pugh and Lee. Count II shall be dismissed without prejudice. An Order will issue consistent with this Opinion.