799 F.2d 62
 Alan TALBERT and Fred Clayton, Jr.
v.
Robert KELLY, Individually and as a Police Officer of the
City of Newark, Angelo Digeralomo, Individually and as a
Police Officer of the City of Newark, L.P. McGee,
Individually and as a Police Officer of the City of Newark,
Michael Stackhaus, Individually and as an employee of the
City of Newark, Jane and John Doe, Individually and in their
capacity as Police Officers or Employees of the City of
Newark, Hugh B. Gallagher, Individually and as Assistant
Corporation Counsel for the City of Newark, et al.
Appeal of CITY OF NEWARK.
 No. 85-5810.
 United States Court of Appeals,
Third Circuit.
 Argued June 6, 1986.
Decided Aug. 25, 1986.
 
 Kathleen C. Goger (argued), Michael Dougherty, Rosalind Lubetsky Bressler, Newark, N.J., for appellant.
 Charles P. Cohen (argued), Neil G. Markowitz, Cohen, Markowitz & Garson, Verona, N.J., for appellees.
 Before ADAMS, WEIS and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 After their arrest for a misdemeanor, plaintiffs were held in jail for four days by the defendant city police. The district court determined that the plaintiffs' constitutional rights had been violated by this prolonged detention and that the city was estopped to deny liability because it had failed to identify the individuals responsible. In addition, the court found that the city had adopted an unconstitutional policy in restricting bail decisions to magistrates, rather than adopting a state procedure rule which permitted delegation to police supervisory officers. In response to questions certified for appeal, we conclude that the city's policy was not unconstitutional, nor did it cause any violation of the plaintiffs' rights. We also hold that the record does not support the imposition of estoppel. However, because a pendent state claim has not yet been resolved, we will remand the case for further proceedings in the district court.
 
 
 2
 After hearing evidence on the liability phase of the case, the district court granted the plaintiffs' motion for a directed verdict. The question of damages was then submitted to the jury, which determined that plaintiffs had been detained for an excessive period of time, but awarded no damages. The district court granted a new trial and certified controlling questions of law to this court. 28 U.S.C. Sec. 1292(b).
 
 
 3
 Plaintiffs were arrested on Thursday, May 6, 1982, at approximately 11:30 a.m. and were charged with the theft of cobblestones from a street, a misdemeanor. After arrest reports were completed, plaintiffs were transported to the Newark West District Police Headquarters where they spent the night.
 
 
 4
 The following morning, Friday, plaintiffs were taken to Municipal Court for a bail hearing, but their cases were not reached before the luncheon recess. Shortly after court resumed in the afternoon and just before the plaintiffs' cases were to be called, the judge announced that he would hear no other matters and recessed court for the weekend. Plaintiffs were then taken to cells at another precinct, where they remained until Monday morning when they returned to Municipal Court. The judge then set bail at $50, and on payment, plaintiffs were released. In the subsequent criminal proceedings, plaintiffs were acquitted.
 
 
 5
 Plaintiffs brought the present suit in the district court, alleging deprivation of constitutional rights as the basis for their claims under Sec. 1983 and appending a state claim under the New Jersey Tort Claims Act. Named as defendants were the City of Newark, the arresting officers, an employee of the Division of Streets and Engineering, corporation counsel for the city of Newark and his assistant. Also named were "Jane and John Doe, police officers or employees of Newark."
 
 
 6
 Testimony at the trial established that municipal court judges were accessible on weekends, holidays, and during evening hours when the court was not in regular session. Thus, they were available for bail hearings twenty-four hours a day. These hearings were frequently conducted over the telephone. If the accused was not heard during regular court hours, the lieutenant in charge of the police station would call the duty judge for a bail ruling. The police also maintained a "twenty-four hour sheet" to monitor and record the status of all jail inmates. Despite these procedures, no request for a bail ruling was made on behalf of plaintiffs after the court recessed on Friday afternoon. At trial no testimony was produced identifying the individual officer responsible for monitoring the plaintiffs' status.
 
 
 7
 After conclusion of the liability evidence, the trial judge ruled that probable cause for the arrest had existed. He dismissed the city employees and the arresting officers, finding as to the latter, "there is no evidence whatsoever that they played any part in the extended detention of plaintiffs." The court commented, "[t]he only defendant which remains is the city itself."
 
 
 8
 Reviewing City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), and its reference to Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the district judge noted the plaintiffs' burden to prove the existence of a municipal policy that had caused the deprivation of their constitutional rights. He then observed, "[n]o facts presented in this case fall within that definition. Plaintiffs themselves presented evidence that Newark had a policy designed to safeguard the rights of the accused and to provide the availability of a magistrate on a 24 hour basis. That policy was violated in this instance."
 
 
 9
 After commenting that the persons individually responsible for processing plaintiffs were not named parties, the judge stated that the City could easily have identified them. He then scrutinized the City's response to interrogatories asking for the names of persons connected with the events.
 
 
 10
 On October 12, 1984, more than five months after the two year statute of limitations had run, plaintiffs had served the following interrogatory on the City.
 
 
 11
 "23. Were there any individuals not presently a party to this lawsuit who were involved in the arrest, detention and processing of the plaintiffs at the time and place in question? If so, indicate the names, addresses and involvement of each such individual and indicate whether or not such person was employed by the City of Newark and whether such person is still employed by the City of Newark and in what capacity that employment is."
 
 
 12
 ANSWER: "None to the knowledge of this defendant except as set forth in records attached hereto."
 
 
 13
 The attachments were the police department's records containing details of the arrest, identification of the accused, names of the arresting officers, the name of the lieutenant classifying and approving the report, the name of the lieutenant accepting bail, names of persons receiving the prisoners at the cell block, initials of officers taking prisoners to court, initials of person who fingerprinted prisoners, and the name of the person who searched the prisoners. The records also reflected the prisoners' movements, activities, and meals. Each entry bore the name or initials of the "doorman" and the badge number of the officers who accompanied the prisoners.
 
 
 14
 No objection to this answer had been filed by plaintiffs, nor had they requested any further information about the identity of the persons referred to in the reports. Nevertheless, the judge commented, "having been directly asked whether there were any such persons [responsible] and having denied their existence and identity, the City cannot now rely upon their absence from this litigation as a shield to its own liability. The City is estopped from claiming at this late juncture the existence of an unnamed indispensable party or parties when it knew or could have easily ascertained the identity of such persons or person."
 
 
 15
 On this basis, the court directed a verdict on liability for plaintiffs against the City and submitted interrogatories to the jury, inquiring what portion of the detention period had been unreasonable and what damages were due plaintiffs.
 
 
 16
 After some period of deliberation, the jury asked several questions, including whether it was "mandatory that an award be made if we feel the system breakdown may have been justified under the conditions at the time." The judge responded that the jury could not refuse to give an award for that reason because the court had decided liability as a matter of law. The jury found that each plaintiff had been detained two days "more than he should have been," but that "[w]e feel there is no amount of dollars justified."
 
 
 17
 Plaintiffs filed a motion for a new trial on damages, and the City moved for judgment notwithstanding the verdict. In granting the plaintiffs' motion, the court found the jury's denial of damages "manifestly unjust" and "without support in the record." The City's motion for reconsideration and judgment n.o.v. was denied.
 
 
 18
 The court did, however, modify its legal basis for finding liability on the part of the City. Assuming no constitutional deprivation in the twenty-eight hour lapse between arrest and Friday afternoon, the trial judge conceded that "the individuals ultimately responsible for the violation were the officers on duty on that Friday and the succeeding weekend days," who had failed to contact a Municipal Court judge. However, the court reasoned that the employee's negligence did not exempt the City from liability "if the city had a policy which encouraged or increased the likelihood of, or failed to prevent, the deprivation."
 
 
 19
 The court noted with approval Rule 3:4-1 of the Rules Governing Criminal Practice promulgated by the New Jersey Supreme Court. That rule, if followed by the City, would have permitted the supervising police officer at the stationhouse to issue a summons to plaintiffs and then release them or admit them to bail. Had the City followed that procedure, the district judge concluded, "the plaintiffs could have simply been released, with a summons or after the issuance of a warrant and the setting of bail, as soon as the post-arrest processing was completed."
 
 
 20
 However, the City's policy was to hold an accused until he appeared before a magistrate, rather than to allow bail at the stationhouse. Moreover, the arrangements for transporting the accused to Municipal Court were "ponderous," and the shifting responsibilities for custody of prisoners in that process created the possibility of delay. The trial judge noted the "absurd complexity" of the procedure, and stated that the "City's deviation from the procedure set forth in the court rules ... caused the plaintiffs' unlawful detention."
 
 
 21
 In conclusion, the court reiterated its estoppel ground, noting that at oral argument on the post-trial motions, the City was given the opportunity to identify the individuals responsible for the plaintiffs' detention, and to permit plaintiffs to amend accordingly. The City declined, and the court, therefore, continued to rely on estoppel as an alternate basis for its action.
 
 
 22
 The district court directed a new trial on damages. Ordinarily, an appeal at this stage would be barred because the order was not final. However, the court stated that its order, holding that the city's policy had caused plaintiffs' constitutional deprivation, involved "a controlling question of law as to which there is a substantial ground for difference of opinion," and thus certified the appeal for consideration pursuant to 28 U.S.C. Sec. 1292(b). This court granted defendant's motion for permission to appeal.
 
 
 23
 We will assume, without deciding, that the length of the plaintiffs' detention was a violation of their rights under the fourteenth amendment. See, e.g., Moore v. The Marketplace Restaurant, Inc., 754 F.2d 1336 (7th Cir.1985); Bernard v. City of Palo Alto, 699 F.2d 1023 (9th Cir.1983); Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133 (4th Cir.1982). That assumption, however, is but a preliminary to discussion of the city's liability.
 
 
 24
 We will discuss the two grounds stated in the district court's opinion in reverse order, treating the estoppel theory first. In the course of discovery authorized before the pretrial conference, plaintiffs could have demanded the names and addresses of all the individuals identified in the reports by initials or illegible handwriting. By invoking an estoppel at trial, the court in effect imposed a sanction for what it conceived to be an inadequate answer to the plaintiffs' interrogatory. This sua sponte ruling occurred long after the time fixed for discovery had expired and in the absence of efforts by plaintiffs to require the City to give more specific answers.
 
 
 25
 The City's answer to the interrogatory was, to put it charitably, quite casual, and would have justified an order under Fed.R.Civ.P. 37(a) requiring an adequate and understandable response. Plaintiffs would also have been entitled to seek counsel fees for the expense incurred in filing a motion to compel an answer. See Fed.R.Civ.P. 37(c). Plaintiffs, however, did nothing.
 
 
 26
 One of the sanctions provided by Rule 37(b) is the entry of judgment by default. The Rule 37(b) sanctions, however, are imposed after the offending party has refused or failed to comply with a court order requiring an answer.
 
 
 27
 Furthermore, a sanction of that severity presupposes egregious noncompliance by the offending party, and would be particularly inappropriate where plaintiffs have failed to exercise in a timely fashion their rights under the Rules to compel adequate answers. The sanction imposed by the court was also disproportionate to the city's offense, because the information apparently was not sought to establish liability on the part of the City, but upon its employees. At least it was in that context that the district judge found the answer to be relevant. Respondeat superior may not be used to fix liability on a municipality under Sec. 1983, and culpability solely on the part of an employee will not support a judgment against the city under the Monell principle. See Monell, 436 U.S. at 691, 98 S.Ct. at 2036. Consequently, even if the answers to interrogatories had led to the identification of the negligent individuals, that would not necessarily have resulted in a judgment against the City.
 
 
 28
 Nor does any basis for the application of traditional estoppel present itself here. The City's answer to the interrogatory contained no misrepresentation, and plaintiffs could safely rely on the answer as far as it went. The answer was perhaps inadequate but was not itself misleading.
 
 
 29
 Moreover, the court appeared to regard the unidentified individuals as "indispensible parties." Perhaps they were necessary to any recovery by plaintiffs, but they clearly were not indispensible parties under Fed.R.Civ.P. 19 because plaintiffs need not name every party potentially liable for a suit to go forward. Although defendants often disclose or accuse potentially responsible parties from motives of obvious self-interest, a party may properly choose to defend solely on the allegations directed at him by the plaintiff. The City's duty to plaintiffs here was simply to respond truthfully to the interrogatories.
 
 
 30
 Additionally, we note that by the time trial began four years had passed since the alleged violation, so that attempts by plaintiffs to amend their complaint to join additional defendants at that point would have met the bar of the statute of limitations.[1] Indeed, when plaintiffs first served the interrogatories the statute of limitations had already run.
 
 
 31
 Nor can we overlook that the plaintiffs' counsel here also handled the criminal charges before the civil suit commenced. This was not therefore a situation in which an unrepresented plaintiff consulted a lawyer at the eleventh hour before the statute ran, and sufficient time was not available for proper investigation or discovery. Hence, we conclude that in view of all the circumstances, the sua sponte imposition of a default judgment was impermissible and amounted to an abuse of discretion.
 
 
 32
 The district court's second theory, which it adopted after the arguments on post-trial motions, is quite distinct from the first. As we understand it, the district judge reasoned that by adopting a cumbersome and inefficient method of processing arrestees, instead of the more flexible rule promulgated by the state supreme court, the City exposed citizens to an increased risk that their rights would be violated through the negligence of city employees.
 
 
 33
 We believe that this analysis fails to satisfy the requirement of Monell and our cases that a sufficient causal relationship be present between the challenged policy and the violation. That the policy made it possible for the violation to have occurred, a "but for" approach, is not enough.
 
 
 34
 The Supreme Court permits the imposition of liability on a municipality only when "the action that is alleged to be unconstitutional implements or executes a policy." Monell, 436 U.S. at 690, 98 S.Ct. at 2035-36. It is only "when execution of a government's policy ... inflicts the injury that the government as an entity is responsible under Sec. 1983." Id. at 694. In Kranson v. Valley Crest Nursing Home, 755 F.2d 46, 51 (3d Cir.1985), we said "[t]he injury must occur as a result of the implementation of the program" and that "the carelessness of an employee in failing to follow a policy ... may establish the negligence of the employee but does not fasten liability on the governmental agency."
 
 
 35
 We similarly stated in Estate of Bailey by Oare v. County of York, 768 F.2d 503, 507 (3d Cir.1985), that "[o]nly if there is a plausible nexus between the policy or established state procedure and the infringement of constitutional rights can a Sec. 1983 action be maintained." See also Bartholomew v. Fischl, 782 F.2d 1148 (3d Cir.1986).
 
 
 36
 In Pembaur v. City of Cincinnati, --- U.S. ----, ----, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986), the Court reiterated that, "municipal liability is limited to action for which the municipality is actually responsible." There, Justice Brennan commented on City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427 85 L.Ed.2d 791 (1985), where the plaintiff had alleged that the city had "caused" the violation by its policy of inadequate police training. Interpreting Tuttle, Justice Brennan said, "both the plurality and concurring opinions found plaintiff's submission inadequate because she failed to establish that the unconstitutional act was taken pursuant to a municipal policy rather than simply resulting from such a policy in a 'but for' sense." (emphasis is the Court's). 106 S.Ct. at 1299-1300 n. 11.[2]
 
 
 37
 The record in this case must be tested against those principles. As noted earlier, plaintiffs had been brought to Municipal Court on Friday morning, with apparently every expectation that they would be given a bail hearing before the close of the afternoon session. That did not occur because of the unexpected early recess by the Municipal Court judge. No evidence suggested that the judges had a practice of early adjournments when cases in the courtroom were awaiting resolution. Quite clearly, the continued detention resulted not from the policy of having hearings in the Municipal Court, but from the faulty and unexplained failure to implement that policy.
 
 
 38
 The next failure to follow the existing policy occurred when the lieutenant in charge of the stationhouse failed to call the duty judge, who was available at all times during the weekend after the court recessed. Once again, this inaction was not the practice of the City, but in fact was contrary to its dictates. No evidence established that the City tolerated or encouraged these deviations from its stated policy.
 
 
 39
 Therefore, the district court properly appraised the situation at the close of testimony when it found that the City had a policy designed to safeguard the rights of the accused, but that it had been violated. On that state of the record, Monell precluded a finding of liability against the City.
 
 
 40
 The alternative that the district court invoked in resolving the post-trial motions represented a shift in the analysis of the substance of the City's policy. The later version of the policy, apparently viewed by the district court as itself unconstitutional, consisted of the refusal to adopt the state rule that the district judge found to be a better procedure.
 
 
 41
 This approach implicitly assumes that the task of the federal courts in determining the constitutionality of state or local procedures is to insist upon the best, or what the court may conceive to be the most efficient, method of coping with a problem. We do not consider that to be the role of the federal courts. States and municipalities may use a variety of procedural devices to protect the constitutional rights of the accused; our function is only to determine whether the one adopted fulfills that purpose. See, e.g., Bell v. Wolfish, 441 U.S. 520, 539, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1978). If the answer is affirmative, we should go no further. If the procedure that a municipality chooses violates or is contrary to state law, but meets federal standards, we may not set it aside. Johnson v. Clinton, 763 F.2d 326 (8th Cir.1985); Moore v. The Marketplace Restaurant, Inc., 754 F.2d 1336, 1349 (7th Cir.1985); Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1138 (4th Cir.1982).[3]
 
 
 42
 The basic difference between the procedures used by the City and those permitted by the state rule is the latter's emphasis on decentralization. The state rule permitted delegation of bail authority to the officer in charge of the stationhouse. The City, however, preferred to leave that function in the hands of the Municipal Court, with provision for twenty-four hour availability of judges.
 
 
 43
 The policy alternatives are clear. We are unaware of any authority disapproving a city's considered determination that the bail function should not be delegated to police officers--even those in a supervisory capacity. Entrusting the task to the stationhouse lieutenant might be more efficient, and might arguably reduce the risk of human error (a proposition which, however, has no support in the record). Nevertheless, the City was entitled to implement a system that embodied the theory of separation of powers and safeguarded the rights of the accused by enlarging the time when a Municipal Court judge would be on duty.
 
 
 44
 In response to the questions certified, as we divine them, we conclude that the City's failure to adopt the state rule was not the proximate cause of the plaintiffs' injury. We also determine that the City's failure to adopt the state rule did not amount to an unconstitutional policy.
 
 
 45
 It follows that the district court erred in granting the plaintiffs' motion for a directed verdict. From the record submitted to us, it appears that plaintiffs had failed to produce sufficient evidence to justify the submission of their case to the jury. However, since the case must be remanded in any event, we believe that the district judge in the first instance should pass upon the City's motion for judgment in light of this opinion.
 
 
 46
 We do not know what disposition was made of the complaint under the New Jersey Tort Claims Act. The parties did not choose to enlighten us on that point, and the partial transcript filed with the district court contains no ruling on that claim.[4]
 
 
 47
 Accordingly, we will remand for further proceedings consistent with this opinion.
 
 
 
 [1]
 The fact that plaintiffs named "John Doe and Jane Doe" as defendants would not extend the statute of limitations. "Replacing a 'John Doe' caption with a party's real name amounts to 'changing a party' within the meaning of Rule 15(c)...." Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 174 (3d Cir.1977). See also Britt v. Arvanitis, 590 F.2d 57 (3d Cir.1978) (New Jersey's John Doe practice is not effective to toll the statute of limitations in federal court, even in diversity cases.). See also Royal Indemnity Co. v. Petrozzino, 598 F.2d 816 (3d Cir.1979)
 
 
 [2]
 In Black v. Stephens, 662 F.2d 181 (3d Cir.1981), we emphasized the necessity for a causal relationship. In that case, the jury found a proximate cause between the plaintiffs' injury and the policy of encouraging police officers to engage in the use of excessive force in the performance of their duties. A causal nexus was established in Black, but that opinion must be read carefully in light of the Tuttle and Pembaur cases
 
 
 [3]
 Anela v. City of Wildwood, 790 F.2d 1063 (3d Cir.1986), does not dictate a contrary approach to that taken here. Like Newark, the City of Wildwood, New Jersey, had failed to adopt the summons procedure outlined in the state criminal practice rules, but instead followed a bail schedule established by a municipal judge. The court held that this was a policy under Monell which could expose the city to liability under Sec. 1983 for unlawfully detaining the plaintiffs. Because the constitutional violation occurred as a result of the city's policy, a nexus could be implied
 Here, however, the detention over the weekend without a bail hearing was not taken pursuant to the policy but rather in deviation from it. Thus, the nexus present in Anela does not exist here.
 
 
 [4]
 If the tort claims are still viable, the question might arise whether disposition of the federal suit precludes adjudication of the pendent state count in the district court, or whether circumstances would permit retention of jurisdiction. See Shaffer v. Board of School Directors, 730 F.2d 910 (3d Cir.1984); Shaffer v. Board of School Directors, 687 F.2d 718 (3d Cir.1982); Weaver v. Marine Bank, 683 F.2d 744 (3d Cir.1982); Lechtner v. Brownyard, 679 F.2d 322, (3d Cir.1982); Tully v. Mott Supermarkets, Inc., 540 F.2d 187 (3d Cir.1976); Galligan v. Chrysler Corp., 82 N.J. 188, 412 A.2d 122 (1980)