David AUSTIN, an individual, Plaintiff,

v.

CITY OF EAST GRAND RAPIDS, a Michigan Governmental Entity; Allen Darznieck, Individually and as an officer of the City of East Grand Rapids Police Department; Harry Wertman, Individually and as an officer of the City of East Grand Rapids Police Department; County of Kent, a Michigan Governmental Entity, Jointly and Severally, Defendants.

No. G87–635.

United States District Court,
W.D. Michigan.

April. 29, 1988.

**1398**

Marovich & Stroba by Richard D. Stroba, Kalamazoo, Mich., for plaintiff.

Darznieck & Wertman, Smith, Haughey, Rice & Roegge by Charles F. Behler, Grand Rapids, Mich., for defendant City of East Grand Rapids.

Varnum, Riddering, Schmidt & Howlett by Jon F. DeWitt, Timothy E. Eagle, Jacqueline D. Scott, Grand Rapids, Mich., for defendant Kent County.

## OPINION

ENSLEN, District Judge.

Plaintiff David Austin brings this civil rights action pursuant to 42 U.S.C. §§ 1981 and 1983 arising out of the alleged failure of the City of East Grand Rapids ("City defendant"), East Grand Rapids police offi-

cers, Allen Darznieck and Harry Wertman ("City officers" or collectively with the City as the "City defendants") to bring him before a magistrate without undue delay. Plaintiff has also named defendant Kent County ("the County" or "County defendant") as a defendant on the basis that he was housed at the Kent County Jail for most, if not all, of the alleged eighty-nine (89) hours that elapsed from the time he was arrested until his probable cause hearing. Plaintiff also seeks to invoke the Court's pendent jurisdiction to litigate his state law claims of assault and battery, false imprisonment, intentional infliction of emotional distress, and negligence and/or gross negligence.

The matter is presently before the Court on defendant City's and defendant County's motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*Section 1981 Claim*

Plaintiff acknowledges—conceding the perceived "merits" of defendant County's argument—that because he, the plaintiff, is white, he cannot claim a violation of his rights under 42 U.S.C. § 1981. While the Court agrees that plaintiff's section 1981 claim should be dismissed, it is clear that it should not be dismissed for the reason stated by plaintiff. In spite of some apparent ambiguity in section 1981 stemming, ironically, from the literal wording of the statute: "all persons shall have the same right ... to make and enforce contracts [etc.] ... *as ... white citizens ...*," (42 U.S.C. § 1981) (emphasis added), the Supreme Court's decision in *McDonald v. Santa Fe Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) more than a decade ago, established unequivocally that whites as well as blacks, for example, may bring claims under the statute. What the statute requires—and what it exclusively addresses—are claims of *racial* discrimination.

Still, here it is clear that the plaintiff does not allege that he was treated differently because of his race. He alleges no specific acts, practices or policies which could be said to be evidence of racial dis-

crimination. The Supreme Court, long ago, extended protection of section 1981 to aliens. *See Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *see also Takahashi v. Fish & Fame Commission,* 334 U.S. 410, 419–420, 68 S.Ct. 1138, 1142–1143, 92 L.Ed. 1478. It is clear that plaintiff's own complaint indicates that he is a "citizen of the United States." Complaint at ¶ 3. Accordingly, plaintiff also fails to state a claim based upon discrimination on account of alienage.

*Section 1983 Claim*

### Defendant Kent County

Plaintiff's argument, in skeletal form, is as follows. There is a policy of the County that those arrested on weekends do not get "prompt attention and that this fact has been known to the City for some time. The City and its officers bring those arrested to the Kent County Jail and must have known of the County's policy. Rather than releasing those arrested for the weekend and seeking a warrant for their arrest, the officers [pursuant to a deliberate policy] chose to leave those arrested in jail until Monday thereby violating their statutory [and constitutional] duty of ensuring an appearance before a Magistrate without unnecessary delay." *See* Plaintiff's Brief at 5 and Complaint at ¶ 14–17. Stated somewhat differently, plaintiff is arguing that it is the policy or custom of the City to follow the allegedly unconstitutional policy of the County.

The Court notes that in general it agrees with plaintiff's analysis of *Talbert v. City of Newark,* 799 F.2d 62 (3d Cir.1986) (analyzing "prolonged detention" claim under the 14th amendment) and with the assertion that the factual situation in the case *sub judicie* is distinguishable from that of *Talbert.* In *Talbert,* the city had a policy designed to protect the rights of the accused by providing for the 24-hour availability of judges for bail hearings—but the Court found that that [constitutional] policy was violated. The *Talbert* court noted that "the police maintained ... a 'twenty-four hour sheet' to monitor and record the status of all jail inmates ..." and, in addition, if an "accused was not heard during regular court hours, the lieutenant in charge of the police station would call the duty judge for a bail hearing." *Id.* at 64. Here, plaintiff alleges that in spite of the constitutional and statutory requirement that the arresting officer promptly bring the suspect before a magistrate, plaintiff, pursuant to the [unconstitutional] policy of the City and County, was held for more than three days (approximately 89 hours) without benefit of a probable cause hearing.

Defendant County counters with the argument that as a "matter of law" a magistrate *must* be available. But the whole point of plaintiff's claim is that there is a policy (on the part of the County) which has been followed or "adopted" by the City to ignore and/or to refuse to carry out those stated policies. *Cf. Talbert* at 68. Defendant City argues that plaintiff's complaint should be dismissed because "the gravaman of [his] complaint against East Grand Rapids and its officers sounds in negligence which is not sufficient to establish a § 1983 claim." Supplemental Brief at 10. Paragraph 17 of plaintiff's complaint alleges:

> That the County and the City are responsible for the unlawful acts performed for the reason that they have failed and neglected to properly instruct their respective deputies and officers as to the propriety of prompt delivery of defendant's [sic] to magistrates and proper constitutional and statutory limits on the exercise of their authority.

Complaint at ¶ 17. Plaintiff has alleged further:

> That the County and the City are responsible for said deprivation of the Plaintiff's constitutional rights regarding pre-charge detention for the reason that said incarceration was pursuant to a policy of the County that those arrested on weekends do not get the proper prompt attention as do those arrested at non-weekend times. Further, that in this case, arraignment delay may have resulted from forum shopping.
>
> That the policy of the County in this regard has been known for some time without change and without accommoda-

tion having been made, and in derogation of long established constitutional rights. Complaint at ¶¶ 15 & 16.

■ Defendants' broad assertion that negligence will not support [any] section 1983 action is not the law. Defendant City alludes to what has become known as the *"Daniels–Davidson"* rule, a composite cognomen drawn the from the Supreme Court's decisions in *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). Put succinctly, the *Daniels–Davidson* rule asserts that negligent conduct simply does not violate *the due process clause. See e.g., Franklin v. Aycock,* 795 F.2d 1253, 1261 (6th Cir.1986) (analyzing *Daniels* and *Davidson* and paraphrasing their combined holdings as standing for the proposition that negligent conduct which causes injury to a protected interest could not be considered a "deprivation" *within the meaning of the fourteenth amendment* ); *see also Love v. King,* 784 F.2d 708 (5th Cir. 1986); *Cannon v. Taylor,* 782 F.2d 947 (11th Cir.1986).

■ First, it is clear that this is not only a "due process negligence case," but that plaintiff has alleged violations of the fourth and fifth amendments as well. Moreover, the *Daniels* court emphasized that section 1983 "contains no state-of-mind requirement *independent of that necessary to state a violation of the underlying constitutional right." Daniels,* 474 U.S. at 330, 106 S.Ct. at 664. For example, in *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), the Supreme Court held that a prisoner must demonstrate *"deliberate indifference* to [his] serious illness or injury ..." to make out an eighth amendment violation. (emphasis added). Thus an allegation of negligence simply does not invoke the protections of the eighth amendment—as it does not invoke the protections of the fourteenth amendment. In both cases an essential element of the *underlying constitutional violation* requires proof of something more than mere negligence.

*Daniels* had occasion to address, without deciding, petitioner's assertion that "it is almost certain *some* negligence claims are within § 1983." *Daniels,* 474 U.S. at 333–334, 106 S.Ct. at 666. The *Daniels* Court observed that the petitioner's example of the failure of a State to comply with the procedural requirements of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) prior to depriving an inmate of good-time credit did not result so much from the officials' hypothetical negligent failure to accord him the protections of the due process clause, but rather resulted from the officials' "deliberate decision" to deny him his good-time credit. *Daniels,* 474 U.S. at 333–334, 106 S.Ct. at 666. Further, the *Daniels* Court noted that "we need not rule out the possibility that there are other constitutional provisions that would be violated by mere lack of care in order to hold ... that such conduct does not implicate the Due Process Clause of the Fourteenth Amendment." *Id.* at 334, 106 S.Ct. at 666.

I now turn to a discussion of what state of mind, if any, is required, to make out a fourth amendment violation based on an "unreasonable seizure" as set forth in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). It is clear that *Gerstein* viewed the probable cause determination as an initial step in the criminal justice system and that "the fourth amendment requires a timely judicial determination of probable cause as a prerequisite to detention ..." *Gerstein,* 420 U.S. at 126, 95 S.Ct. at 869. As the *Gerstein* concurrence noted, what is at stake "is the *continuing incarceration of a presumptively innocent person." Id.* at 127, 95 S.Ct. at 870 (emphasis added).

Moreover, the *Gerstein* majority traced the common law antecedents of the fourteenth amendment noting that the fourth amendment protects against unfounded invasions of privacy as well as liberty. *Id.* at 112, 95 S.Ct. at 862. The *Gerstein* majority observed that the customary, or perhaps obligatory, common law practice of bringing an arrested person before a justice of the peace shortly after arrest and discharging him if it was found that there was no reason to believe he had committed a crime, was used by the Framers "as a

model for a 'reasonable' seizure." *Id.* at 114–115, 95 S.Ct. at 863–64.

■ I see no reason to unreflectively graft the *Daniels–Davidson* no-negligence rule onto plaintiff's fourth amendment claim. It is clear that the *Daniels–Davidson* rule establishes that simple negligence cannot give rise to a fourteenth amendment procedural or substantive due process claim. However, the fourteenth amendment substantive due process right to be free from abusive government conduct is analytically distinct from the substantive fourth amendment guarantee against unreasonable seizures. Both *Daniels* and *Davidson* concerned claims that due process demands that the State exercise "due care" in protecting those whom it incarcerates from unintended injury. To hold that the due process clause is triggered by merely negligent conduct, the *Daniels* court observed, would be to deny the traditional teachings and common sense notions of the due process clause: "'... protection of the individual against arbitrary action of government ...'" (citations omitted), "preventing governmental power from being 'used for purposes of oppression.'" *Daniels,* 474 U.S. at 331, 106 S.Ct. at 665 (citations omitted).

Although those same policy concerns are surely protected by the broad strictures of the fourth amendment, the particular fourth amendment "due process" protection at issue here directly implicates the most fundamental premise of our criminal law: the presumption of innocence. Thus this case presents a different issue than that of the constitutionalization of common law duties of care owed by government actors. *Id.* at 335, 106 S.Ct. at 667. Nor does the wording of the fourth amendment threaten to "supplant traditional tort law" or *mutatis mutandis,* "'... make [of the fourth amendment] a font of tort law to be superimposed upon whatever systems may already be administered by the states.'" *Id.* at 335, 106 S.Ct. at 667 (other citations omitted).

The *Gerstein* court noted that it "deal[t] with the complex procedures of a criminal case and a threshold right guaranteed by the Fourth Amendment.... The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define 'the process that is due' for seizures of person or property in criminal cases, including the detention of suspects pending trial." *Gerstein,* 420 U.S. at 125 n. 27, 95 S.Ct. at 869 n. 27.

To hold that a suspect, arrested without a warrant, may then be [negligently] deprived of his fourth amendment right to a reasonably prompt probable cause hearing is to trivialize the due care which the constitution requires. Under *Gerstein,* it is clear that what the Court has proposed *is* a standard of due care in that it requires a "fair and reliable probable cause determination ... either before or *promptly after arrest.*" *Id.* at 125, 95 S.Ct. at 869 (emphasis added). The Court emphasized that "while the State's reasons for taking summary action [warrantless arrests] subside [after custody], the suspect's need for a neutral determination of probable cause increases significantly ... When the stakes [of prolonged detention] are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty." *Id.* at 114, 95 S.Ct. at 863. The *Gerstein* Court noted that States have some flexibility in adopting the required procedures, noting that in some cases "only minor adjustment[s], *such as acceleration of existing preliminary hearings*" would be necessary. *Id.* at 124, 95 S.Ct. at 868 (emphasis added).

Further, it is clear that the requirement that due care be taken to bring about this prompt probable cause hearing is demanded by history and common sense so as not to trivialize the presumption of innocence. To hold otherwise is to foster the use of arbitrary power in that officials would be encouraged to make warrantless arrests and then to ignore their corresponding duty to exercise reasonable care, that is, to promptly bring the arrestee before a judicial officer for a prompt determination of probable cause. *Cf. Uberoi v. University of Colorado,* 713 P.2d 894 (Colo.1986) (the Colorado Supreme Court declining to ex-

tend *Daniels–Davidson* rule to first, fourth, fifth, and tenth amendment claims). *But cf. Willocks v. Dodenoff,* 110 F.R.D. 652, 657 (D.Conn.1986).

In *Willocks,* the court noted the congruity that should obtain between a criminal suppression hearing and a section 1983 damage action based upon the same violation. The court went on to observe that in the context of a criminal case, a fourth amendment challenge to the veracity of the affidavit must fail where the accused alleges that the affidavit's false statements were the product of the affiant's " 'negligence or innocent mistake.' " *Willocks,* 110 F.R.D. at 656 *citing Franks v. Delaware,* 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978). Following this rationale drawn from *Franks,* the court added a second cite: *"Cf. Daniels ..."* *See Willocks,* 110 F.R.D. at 656. I find the cite to *Daniels* unnecessary to the court's holding, and, in any event, the fourth amendment *Franks* issue presented in *Willocks* (i.e., the negligent inclusion of a materially false statement in a warrant application) is conceptually and substantively distinct from the *Gerstein* issue presented in the case before me: the failure to receive a "reasonably prompt" determination of probable cause.[1]

As I noted in *Mabry v. County of Kalamazoo,* 626 F.Supp. 912, 915 (W.D.Mich. 1986), "a defendant's right to a prompt determination of probable cause *does not vary with the good faith or bad faith of the arresting and holding officers.*" (emphasis added). Further, I noted that "... *Gerstein* established a *"per se"* rule, *without regard to why the person is being held ..."* I can see no reason to qualify this *"per se"* rule by imposing a state of mind requirement of something more than mere "negligence" in the *warrantless arrest* context.

 Again, it is not the good faith or bad faith, or perhaps put differently, it is not

the state of mind of the arresting and/or the holding officers that is fundamentally at issue here. Rather, it is the question of whether or not the arrested person *has been detained* beyond the time needed to take "the administrative steps incident to arrest" *without a judicial determination of probable cause.*

In *Mabry* I noted that where the period of detention was *not "prolonged,"* that is, approximately twenty-four (24) hours, it might be appropriate to consider the question of whether a judicial officer was *actually available* to make a determination of probable cause. *Mabry,* 626 F.Supp. at 915. I also noted that in calculating the time needed to carry out the requisite administrative steps and to locate a judicial officer, it might be proper to consider the availability of a judicial officer—especially in a small town/rural area. *Id.* Accordingly, a "reasonableness inquiry" is appropriate to the extent that a court must look at the totality of the circumstances surrounding the delay where the period of warrantless detention is not extended. However, I cautioned that there is an outside limit to the length of time that a suspect can be held without a probable cause determination. I held that the defendants in *Mabry* exceeded that critical time period when the plaintiff had been detained for more than sixty (60) hours without a probable cause hearing and was finally released. Here, the outside time limit also appears to have been surpassed. Plaintiff alleges that he was held "without benefit of hearing and without bond being set" for approximately eighty-nine (89) hours. Complaint at ¶ 14.

Defendant's argument that there is a statutory requirement, and hence, a statutory right to be brought before a magistrate misses the mark. *Gerstein* demands that a defendant arrested without a warrant not be deprived of liberty for a pro-

---

1. While the *Willocks* court applied and extended the *Daniels–Davidson* no-negligence rule to fourth amendment claims in the context of a pre-trial suppression hearing, the Court-created *Gerstein* rule was intended to deter the government from violating the fourth amendment privacy and liberty rights of individuals who have

been arrested *but have not yet had a probable cause hearing.* I find this distinction crucial. To the extent that my analysis can be read to conflict with the holding in *Willocks,* I simply disagree with *Willocks* that the *Daniel–Davidson* no-negligence rule should be extended to the fourth amendment.

longed period unless a prompt probable cause determination has been made. The issue is not whether the plaintiff's statutory right to a hearing was delayed, but rather whether a prompt determination of probable cause was made by a neutral and detached judicial officer. And, assuming that a prompt determination was not made, the focus of inquiry turns to who is responsible for the prolonged detention.

The County argues that it is only the City and the arresting officers who could be held responsible for the asserted unnecessarily long detention here because the officers of the City were responsible for bringing the accused before a magistrate pursuant to M.C.L. § 764.13; M.S.A. § 28.871(1). Thus under the County's theory, it is only the arresting officers and not the custodial officials who are responsible for the prolonged detention.

In *Mabry v. County of Kalamazoo*, 626 F.Supp. 912 (W.D.Mich.1986), I found Kalamazoo County ("the county") liable for actions which constituted the policy or custom of the district courts. In *Mabry*, the arresting officer was a deputy sheriff, employed by the county. Further, the county was responsible for running the Kalamazoo County Jail and the court from which the probable cause determination would have been sought was also subjected to the control of the county. I noted that:

> Defendants are constitutionally obligated to ensure that a judicial officer is available to make a probable cause determination within the requisite period of time ... The Supreme Court in *Gerstein* sharply limited that 'balancing,' 'consideration of all the circumstances,' or determination of 'reasonableness' a court or finder-of-fact should engage in such cases when it stated that the existence of probable cause justifies only the arrest and "a brief period of detention to take the administrative steps incident to arrest." (citation omitted). 'Once the suspect is in custody ... the reasons that justify dispensing with the magistrate's neutral judgment evaporate.' (citation omitted). *The onus is then on the arresting and holding officers to ensure that the suspect receives a prompt determination of probable cause.*

*Mabry*, 626 F.Supp. at 915 (emphasis added). *See also Llaguno v. Mingey*, 763 F.2d 1560, 1568 (7th Cir.1985) (*en banc*) (detention of plaintiff for some 42 hours following a warrantless arrest without probable cause hearing before a magistrate stated fourth amendment violation actionable under section 1983); *accord King v. Massarweh*, 782 F.2d 825 (9th Cir.1986) (citing *Gerstein* and *Llaguno* and finding two-day detention without probable cause hearing actionable under section 1983 as fourth amendment violation).

The City defendants argue that unlike *Mabry*, the present case involves officers who were employed by the municipality, not Kent County. Further, City defendants argue that it was the County, not the municipality that was responsible for running the Kent County Jail and the 63rd District Court from whom the probable cause determination would have been sought. City defendants conclude that the municipality cannot be held vicariously liable for the actions of the County and its courts. *See* generally, Brief in Support of City Defendants at 15–16.

County defendants argue that the continued detention at issue here resulted not from the policy of having the [City] arresting officers house their arrestees in the county jail, but rather from the "unexplained" or "negligent" failure of the officers to implement the required statutory policy and procedure. *See* County's Brief at 10. M.C.L.A. § 764.13, M.S.A. § 28.871(1) clearly provides:

> A peace officer who has arrested a person for an offense without a warrant shall without unnecessary delay take the person arrested before a magistrate of the judicial district in which the offense is charged to have been committed, and shall present to the magistrate a complaint stating the charge against the person arrested.

County defendants argue that they may rely upon the presumption that the City of East Grand Rapids Police Department and its officers will comply with their statutory duties. Moreover, the County argues that the Kent County Sheriff, in this case, Sher-

iff Phillip Heffron, was under a statutory duty to confine the plaintiff and was constrained to release him unless by way of habeas corpus, court order, or as otherwise provided by law. *See* M.C.L.A. § 600.1845; M.S.A. § 27A.1845. *See also* County's Brief in Support of Motion to Dismiss at 6.

Defendant Kent County argues that an arrestee's appearance before a magistrate for the purpose of determining probable cause would not be achieved even assuming Kent County brought the arrestee before the magistrate inasmuch as the information regarding the arrest and the grounds for probable cause for the arrest were known to the arresting officers and the City of East Grand Rapids, not Kent County. The County argues that just as police officers can accept a warrant on its face and are not required to look behind the warrant, the County and its holding officers should not be required to look behind the ["holding"] instructions [2] it receives from arresting jurisdictions.

The defendant County argues that *Mabry* can be readily distinguished in that in *Mabry* the arresting and holding entities were the same, and "one entity had the statutory obligation, statutory authority, and practical information necessary to insure that the arrestee received a reasonably prompt determination of probable cause." County Defendant's Brief at 8. Defendant County argues that the obligation to obtain a judicial determination of probable cause rests with the arresting officers.

■ While the Court agrees that the obligation to secure the initial probable cause determination rests with the arresting officers, *Gerstein* clearly held, more broadly, that the fourth amendment requires that "as a condition for any significant pretrial restraint on liberty" a fair and reliable determination of probable cause be made by a judicial officer "either before or promptly after arrest." 420 U.S. at 125, 95 S.Ct. at 869.

Further, in *Bernard v. City of Palo Alto*, 699 F.2d 1023, 1026 (9th Cir.1983), the Ninth Circuit rejected defendants' argument that it was not the County's obligation to comply with *Gerstein* because the County was only the jail keeper and the jail keeper had no control over the "'broad spectrum of peculiarized facts that contribute' to delay." *Bernard*, 699 F.2d at 1027. The *Bernard* court noted that the County was responsible for operating the jail and had custody over the arrestees. Moreover, the Ninth Circuit emphasized that the County determined the challenged detention policies and practices which were apparently designed to satisfy *Gerstein*. Finally, *Bernard* noted that "[b]y virtue of its power to release arrestees unconstitutionally detained, the County is in a position to protect the fourth amendment rights of arrestees ... and is a proper defendant." *Id.*

While there are some differences between this case and *Bernard*, the Court believes *Bernard* is sufficiently on point to be of use to the Court's analysis. It is true that the challenged "detention policy" in *Bernard* was a written one, however, that fact is not significant where, as here, plaintiff has alleged the existence of an [unwritten] policy or custom of the County not to provide magistrates for probable cause hearings on the weekends (*see* Plaintiff's Brief in Opposition to City's Motion to Dismiss at 2), that the City must have known of this alleged policy yet still placed the plaintiff in the County jail, and that the County was the custodian of the plaintiff. The Court does not find the County's argument that there is no allegation in the complaint that a magistrate was "unavailable" dispositive here given plaintiff's arguments and assertions found in his briefs in opposition to defendants' motions. To the extent that plaintiff has not specifically alleged that "magistrates were not available," the Court will grant plaintiff leave to amend his complaint to correct this deficiency. *See e.g., Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir.1976) (noting policy of allowing liberal amendment of civil rights complaints).

---

**2.** A correctional facility, such as Kent County Jail, which houses prisoners arrested by multiple jurisdictions, typically receives instructions from arresting jurisdictions to hold an arrestee. These instructions are routinely entitled "greetings to the Sheriff of Kent County."

■ Nor is the County's argument that the stated statutory duties concerning prompt detention hearings relieve the County from liability persuasive. Moreover, I find nothing to the contrary in the Supreme Court's recent analysis and discussion of final policymaking authority in the context of municipal liability for personnel decisions. *See St. Louis v. Praprotnik,* —— U.S. ——, 108 S.Ct. 915, 99 L.Ed.2d 107 (Sup.Ct.1988). In fact, in *Praprotnik,* the Court emphasized that "[r]elying on the language of § 1983, [it] has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Id.* 108 S.Ct. at 926 (other citations omitted). Stating the matter somewhat differently, the *Praprotnik* Court noted that "[r]efusals to carry out stated policies could obviously help to show that a municipality's actual policies were different from the ones that had been announced." *Id.* at 928.

The County's argument that it may properly rely upon the presumption that the City of East Grand Rapids Police Department and its officers will comply with their statutory duties is not persuasive in the face of plaintiff's constitutional challenge and the facts as alleged. The County argues that just as police officers can accept a warrant on its face and are not required to look behind the warrant, the County and its holding officers should not be required to look behind the instructions it receives from arresting jurisdictions to hold an arrestee.

In *Baker v. McCollan,* 443 U.S. 137, 143, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979), respondent McCollan brought a section 1983 claim against the sheriff who had arrested and detained him on the basis of the sheriff's " 'intentional failure to investigate and determine that the wrong man was imprisoned.'" It is significant that McCollan did not attack the validity of the warrant under which he was arrested, but rather only argued that his repeated protests of mistaken identity fell on deaf ears. The Supreme Court noted that McCollan may have stated a claim under state law under the facts presented but had not stated a claim under the Constitution. The Court went on to note:

> The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law.' A reasonable division of functions between law enforcement officers, commiting magistrates, and judicial officers—all of whom may be potential defendants in a § 1983 action—is entirely consistent with 'due process of law.' Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

443 U.S. at 145–46, 99 S.Ct. at 2695.

*Cf. Fowler v. Cross,* 635 F.2d 476, 480 (5th Cir.1981) (citing *McCollan* and holding that the [statutory] duty and obligation to afford parolee a preliminary hearing rests with the Parole Commissioners and not local jailers and that therefore the county defendants were not liable where they were merely holding appellant *pursuant to a facially valid warrant* issued by the Parole Commission.)

In both *McCollan* and *Fowler* the division of responsibility arguments turned on the fact that the local jailers, that is, the holding officers and/or entity were holding the arrestee *pursuant to a facially valid warrant.* The Court believes that given the teachings of *Gerstein,* the absence of a facially valid warrant in the case *sub judicie* makes *McCollan* and *Fowler* readily distinguishable.

■ The County emphasizes that assuming that the officers in this case failed to follow the statutory procedure, it cannot be held vicariously liable for the negligence of the City. It is clear—as both plaintiff and defendants recognize—that under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) the doctrine of *respondeat superior* is inapplicable here. Moreover, the County asserts that defendant City's argument that a court clerk suggested or "instructed" that the municipal officers lodge the plaintiff in the county jail and arraign him on Monday does not relieve the officers of their statutorily [and/or their constitutionally] mandated obligations. The Court readily agrees that this purported defense of "the clerk made me do it" is legally irrelevant.

Still, with respect to plaintiff's allegations of a County policy, the Court finds that plaintiff has recited more than conclusory boilerplate and under the facts of this case has adequately alleged a causal connection between the alleged policy and plaintiff's constitutional injury. In making this determination, I have borne in mind that a complaint should not be dismissed pursuant to a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Moreover, all allegations must be taken at "face value," *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed. 2d 90 (1974). In addition, "well-pleaded facts are taken as true, and the complaint is construed liberally in favor of the party opposing the motion." *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir.1975). All reasonable inferences which might be drawn from the pleading are justified. *Fitzke v. Shappel*, 468 F.2d 1072, 1076 n. 6 (6th Cir.1972). Finally, it is clear that "[a] case brought under the Civil Rights Act should not be dismissed at the pleadings stage unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Lucarell v. McNair*, 453 F.2d 836, 838 n. 1 (6th Cir.1972).

### Defendant City of East Grand Rapids

In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986), the Supreme Court emphasized that "municipal liability is limited to action for which the municipality is actually responsible." In reviewing the Court's analysis as set forth in *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), Justice Brennan, in *Pembaur*, went on to note that "both the plurality and concurring opinions [in *Tuttle*] found plaintiff's [jury instructions] inadequate because she failed to establish that the unconstitutional act was taken pursuant to a municipal policy rather than simply resulting from such a policy in a 'but for' sense." *Pembaur*, 452 U.S. at 482 n. 11, 106 S.Ct. at 1299–1300 n. 11.

The Court notes, that at first blush the gravamen of plaintiff's argument appears to rest on just such a "but for" analysis. Plaintiff argues that "[i]n fact both sides [the County and the City] are responsible, as the actions of each were 'but for' causes of the unlawful detention." *See* Plaintiff's Brief in Opposition to Defendant County's Motion at 7. However, upon a close and liberal reading of plaintiff's complaint and related briefs it appears that he is really alleging that the City and the County are joint [constitutional] tortfeasors. Further, plaintiff argues that the policy of the County [a policy of not having magistrates "available" during the weekend hours] is an unconstitutional policy which has been known for some time by the City. Complaint at ¶ 16. Further, reading plaintiff's complaint in the light most favorable to him it appears that plaintiff is also arguing that both "the County and the City are responsible for the unlawful acts performed for the reason that they have failed and neglected to properly instruct their respective deputies and officers as to the propriety of prompt delivery of defendant's [sic] to magistrates and proper constitu-

tional and statutory limits on the exercise of their authority." Complaint at ¶ 17.

■ Here, the threshold inquiry is whether plaintiff has adequately pled that the enforcement of a municipal policy was the "moving force" of the violation of plaintiff's constitutional rights. *Cf. e.g., Polk v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981). Plaintiff has alleged here that the City is liable because it is following the County's policy—or perhaps the County's custom—not to have a magistrate available on the weekend and to allow those arrested without a warrant on the weekends to be detained for an extended period of time in violation of the fourth and fourteenth amendments. It has been said, for example, that a municipality cannot be held liable under section 1983 where its officers are merely implementing a state policy. *Cf. MacLean v. City of Bellingham,* 705 P.2d 1232 (1985). Plaintiff appears to be arguing that the City should be held liable for the County's policy. Again, *respondeat superior* liability is not available in section 1983 actions.

■ Further, plaintiff also argues that the City and County are liable because they have failed and neglected to properly instruct their deputies and officers as to the [constitutional] propriety of prompt delivery of defendant's [sic] to magistrates for a probable cause hearing. Complaint at ¶ 17. However, the Sixth Circuit, in the fourteenth amendment context, has held that a municipality may be held liable only where there is a complete failure to train the police force, or where training is so reckless or grossly negligent that future misconduct is substantially certain to occur. *See Hays v. Jefferson County Ky.,* 668 F.2d 869 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *see also McKenna v. Memphis,* 785 F.2d 560 (6th Cir.1986); *Cannon v. Taylor,* 782 F.2d 947 (11th Cir.1986) (gross negligence required to establish liability for inadequate training); *Turpin v. Mailet,* 619 F.2d 196, 202–203 (2d Cir.1980); *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980) (holding in supervisory context that failure to take remedial steps to correct constitutionally deficient acts must amount to deliberate indifference or tacit authorization of the acts).

■ Moreover, this Court has previously noted that where plaintiff alleges municipal liability, the substantive case law, on the whole, requires the plaintiff to plead, at least to some extent, the facts upon which he places his claim. *See Haas v. Berrien County Sheriff's Dept.,* 658 F.Supp. 877, 880 (W.D.Mich.1987); *see also Bartalone v. County of Berrien,* 643 F.Supp. 574 (W.D. Mich.1986). Although plaintiff's general allegations would suffice under Rule 8(a) of the Federal Rules of Civil Procedure, courts have imposed a more stringent standard of pleading in this type of case. To adequately allege municipal liability plaintiff "must set forth facts showing the existence of the offending custom or policy." *Loza v. Lynch,* 625 F.Supp. 850, 853 (D.Conn.1986). The supporting details of plaintiff's municipal liability claim are lacking here. Plaintiff argues that the City must have been aware of the County's detention policy but did nothing to remedy it. It is true that failure to remedy a wrongful act can be evidence of a policy or custom—here a custom of tacitly approving the County's alleged unconstitutional policy—(*see Grandstaff v. City of Borger,* 767 F.2d 161, 170–72 (5th Cir.1985)), still I find that plaintiff must allege something more than what presently has been set forth in ¶¶ 14–17.

In his brief, plaintiff argues that the City should have taken action to convince the County to change its policy so that the magistrate would be available on weekends for probable cause hearings. In some circuits, it is unnecessary to specifically allege a custom or policy: "it is enough if the custom or policy can be inferred from the allegation of the complaint." *Shaw v. Department of Alcoholic Beverage Control,* 788 F.2d 600, 610 (9th Cir.1986); *see also Oliveri v. Thompson,* 803 F.2d 1265 (2d Cir.1986); *cert. denied,* —— U.S. ——, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987) (suggesting in dicta that because of the strong policy considerations favoring bringing suits to protect civil rights, it is inappropriate to require plaintiffs to develop the de-

tailed factual information they need to support claims of municipal policy or custom or supervisory misconduct prior to bringing suit). Still, the Court believes that plaintiff's complaint is too skeletal to withstand a motion to dismiss with respect to the defendant City.

The Court is well aware that plaintiffs must often conduct discovery pursuant to the federal rules to uncover the facts they need to establish supervisory or municipal liability. Nevertheless, I must impose a higher standard of pleading than "notice" pleading. Accordingly, I will dismiss plaintiff's complaint insofar as it pertains to defendant City without prejudice. I will grant plaintiff thirty (30) days from the date of this opinion to file an appropriate amended complaint against the City of East Grand Rapids.

The Court emphasizes that given the nature of plaintiff's constitutional claim, the facts as alleged in plaintiff's complaint, and given its previous rationale in *Mabry*, plaintiff has adequately stated a custom or policy on the part of the County so as to survive a motion to dismiss.

 The Court concedes that the joint [constitutional] tortfeasor aspect to this case makes it somewhat more complex than that which was presented in *Mabry*. However, I noted in *Mabry* that both the holding and arresting officers may be liable. Finally, plaintiff alleges that he "was held first at the city of East Grand Rapids Police Department and then at the Kent County Jail." Complaint at ¶ 11. Although the County defendant has indicated in its supporting brief that Sheriff Heffron is not responsible for the prolonged detention of plaintiff, *plaintiff* has not named any particular holding officer or officers by name in his complaint. Still, plaintiff has indicated in his supporting briefs that he wishes to hold both the "holding officers" and the "arresting officers" liable. Accordingly, the Court will grant plaintiff leave to amend to cure this deficiency both as to the individual County officers and the City. *See, e.g., Rotolo v. Borough of Chareroi*, 532 F.2d at 923 ("To accomplish the dual objectives of weeding out frivolous cases and keeping federal courts open to legitimate civil rights claims, courts should

allow liberal amendment of civil rights complaints under Fed.R.Civ.P. 15(a)").

Where a constitutional duty is assigned by a specific amendment and where that duty is enunciated by the Supreme Court, the concept of a constitutional tort as well as certain corresponding principles of tort law may be appropriately applied. For example, while the Supreme Court has indicated that the due process clause is not implicated by mere negligence, it has noted that while "requiring complaints to allege something more than negligence would raise serious questions about what 'more' than negligence—intent, recklessness, or 'gross negligence' is required, and indeed what these elusive terms mean ... [nevertheless] many branches of the law abound in nice distinctions that may be troublesome but have been thought nonetheless necessary ..." *Daniels*, 474 U.S. at 334, 106 S.Ct. at 667. The Court concluded that in the fourteenth amendment context, it would "decline to trivialize the Due Process Clause in any effort to simplify constitutional litigation." *Id.* Similarly, in the case before me, I decline to trivialize the protections of the fourth amendment and the presumption of innocence in order to simplify the constitutional claims asserted by plaintiff. Although assessing final liability in this case may be somewhat problematic, at this point I believe it proper to invoke the concept of joint [constitutional] tortfeasors, and, in addition, I decline to assign a state of mind requirement of something more than simple negligence to this *Gerstein*-type violation.

I point out that the plaintiff has not indicated whether he is also alleging a substantive and/or a procedural due process violation under the fourteenth amendment. In any event, plaintiff has failed to adequately plead his fourteenth amendment claim. Accordingly, I will dismiss that claim as to all the defendants without prejudice.

Finally, in *Jackson v. City of Joliet*, 715 F.2d 1200 (7th Cir.1983), a pre-*Daniels* case, Judge Posner noted that, as a general matter, "[t]he Civil Rights Act of 1871 did not make every tort committed under color

of state law actionable in federal court." While agreeing with that basic proposition, the Court also believes that Judge Minor Wisdom's assertion in the fourteenth amendment context that *"Parratt v. Taylor* is not a magic wand that can make any section 1983 action resembling a tort suit disappear into thin air" is well taken and still relevant even in the light of *Daniels. Augustine v. Doe,* 740 F.2d 322 (5th Cir. 1984).

Further, Judge Posner's comity concern that "state tort law [not] be completely swallowed up by section 1983" (*Jackson,* 715 F.2d at 1205) is counterbalanced by the opposing federal concern that the basic purpose and core function of section 1983 suits not be eviscerated, but rather that they be allowed to continue to deter official misconduct and stimulate, where appropriate, institutional reform. Put differently, in attempting to side-step the alleged avalanche of questionable "tort" suits brought pursuant to section 1983, courts must be careful that their "evasive" actions do not so curtail the central purpose of this important remedial statute so as to acquiesce to unconstitutional conduct, thereby encouraging the formation of a "constitutionaless" tundra of bureaucratic efficiency.

*Pendent State Claims*

Finally, in addition to the civil rights claims previously discussed, plaintiff has also alleged various state law torts including assault and battery, false imprisonment, intentional infliction of emotional distress, negligence and gross negligence. Defendant County also asks that this Court decline to exercise jurisdiction over plaintiff's state law claims. Plaintiff argues that because his state claims arguably do not "predominate" over his federal cause of action, this Court should exercise pendent jurisdiction over them.

It is clear that the decision of whether to exercise jurisdiction over plaintiff's state law claims which are related to a federal cause of action properly before a district court is committed to the sound discretion of that court. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In general, a court considers "judicial economy, convenience and fairness to the litigants" in deciding whether or not to exercise pendent jurisdiction. *Id.* at 726, 86 S.Ct. at 1139.

However, where close questions of state law are implicated, "[n]eedless decision of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law." *Id. See also Wilson v. Beebe,* 770 F.2d 578 (6th Cir.1985).

■ It is clear to the Court from reading the parties' briefs that there are a number of legal questions relating to governmental immunity and damages which are properly characterized as "close questions" of state law within the meaning of *Gibbs.* Although the state and federal claims may arise out of a common nucleus of operative facts, the issues are not identical. Moreover, interjecting the issues of governmental immunity and/or damages will unnecessarily complicate the trial and will have a tendency to confuse the jury. Accordingly, the Court believes the most prudent course of action is to dismiss plaintiff's state law claims without prejudice. *See Gibbs,* 383 U.S. at 727, 83 S.Ct. at 1139–40; *see also L.A. Draper & So v. Wheelabrator-Frye, Inc.,* 735 F.2d 414, 427–28 (11th Cir.1984) (noting district court has the power to dismiss pendent state claims throughout the course of litigation).

### ORDER

In accordance with the opinion entered April 29, 1988;

IT IS HEREBY ORDERED that defendants City of East Grand Rapids, Allen Darznieck and Harry Wertman's motion to dismiss is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that plaintiff's complaint is DISMISSED without prejudice only with respect to defendant City of East Grand Rapids;

IT IS FURTHER ORDERED that plaintiff is granted leave to file an amended complaint as to the defendant City and must file such complaint within thirty (30) days of the entry of this Order;

**1410**

IT IS FURTHER ORDERED that defendant County of Kent's motion to dismiss is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that plaintiff's fourteenth amendment claims are DISMISSED without prejudice as to all defendants;

IT IS FURTHER ORDERED that plaintiff's section 1981 claim is DISMISSED as to all defendants;

IT IS FURTHER ORDERED that plaintiff's pendent state claims are DISMISSED without prejudice as to all defendants.